SHUFELDT and others *v.* JENKINS and others.

MILL CREEK DISTILLERY CO. *v.* SAME.

(*Circuit Court, E. D. Virginia.* October, 1884.)

FRAUDULENT CONVEYANCE — PREFERENCES — INJUNCTION — LIS PENDENS — VIRGINIA STATUTE.

An insolvent merchant of Richmond, Virginia, in consideration of extensions by a creditor, promises that he will give no preferences against the creditor. The promise is made while a secret deed of preference is already executed. Finally, the insolvent writes to the creditor, who is afterwards complainant, asking the withdrawal from bank of a note about to fall due, and repeats the promise that no preference will be given against him, and the note is withdrawn; yet, in a few days, the insolvent makes a deed giving a large preference against complainant. This deed is not recorded, and the insolvent merchant continues his business with open doors. The complainant, hearing by some means of this deed, filed his bill, charging fraud as to himself on the facts, alleging that the deed is not recorded, and is null and void under the laws of Virginia, as against creditors, until recorded; asking an injunction against all interference with the goods of the insolvent, and that the marshal may take immediate possession of the goods. This order was granted, and at a subsequent date a receiver was appointed. The marshal took possession of the goods, and afterwards, on the same day, the deed was recorded. *Held,* that the deed was fraudulent as to complainant, and as to all creditors, and must be set aside as to the preferred creditor, whether he had a knowledge of the fraud or not. *Held* that, under the statutes of Virginia, the order of injunction and seizure was proper, and that the *lis pendens* of the complainant creditor took precedence of and invalidated the recording of the deed as to defendants.

In Chancery.

These two cases are practically one, and in what follows particular mention will be made only of the first case named. Besides these two bills, creditors' petitions have been filed by Walsh & Kellogg; Gottschalk & Co.; Charles H. Ross & Co.; J. Hayes & Co.; Griffiths, Curtis & Co.; Charles Ewan & Co.; W. W. Johnson & Co.; and Maddux, Hobart & Co.,—all wholesale liquor dealers.

On the tenth of January, 1883, this court, then sitting in Alexandria, on the bill first exhibited in this cause, made an order assuming custody of the goods, chattels, effects, and property of E. Courtney Jenkins & Co., of Richmond, including the books of account, and all bonds, bills, notes, and other evidences of debt due the house, and restraining the defendants and all other persons from interfering with the property, books, and claims thus taken into custody. The marshal executed this order early on the morning of the eleventh of January. The evidence subsequently taken discloses that the firm of E. Courtney Jenkins & Co. consisted alone of E. Courtney Jenkins, individually. In all that follows the firm name will be disregarded; the defendant will be designated as E. C. Jenkins simply. The evidence also discloses the following facts:

The defendant had been insolvent for several years, and was then insolvent. His books showed liabilities to the amount of $73,000, and assets estimated at less than $50,000. These assets have been subsequently sold and collected with care and diligence, and have produced only about $25,000. When these proceedings commenced, the defendant had made two deeds of assignment, neither of which had been put on record, and both of which were still in the hands of their grantees as subsisting deeds. One of these deeds had been executed on the sixth day of October, 1881. In it, E. C. Jenkins—after reciting that George Gibson, of Richmond, and Joseph W. Jenkins, of Baltimore, had, for the purpose of enabling him to conduct his business, indorsed numerous negotiable notes of his, and had promised and agreed to renew these indorsements, and to indorse other notes, for the purpose of enabling him to go on with his business, if he would fully secure them from risk, liability, and loss on account thereof—conveyed to John G. Spotts, as trustee, all the goods, wares, and merchandise then in the store-house in Richmond occupied by E. C. Jenkins, and all goods, wares, and merchandise that should thereafter be brought upon said premises by the said E. C. Jenkins, or upon any other premises in Richmond occupied by said Jenkins in his business; also all goods, wares, and merchandise, especially wines and liquors, of every description, that were then or should be thereafter standing in the name of said Jenkins in any warehouse, or be *in transitu* therefrom in the state of Virginia or any state of the United States,—upon trust that the trustees should permit the said Jenkins to remain in possession of the property conveyed, and to use and dispose of it in carrying on his business until default, etc., and

upon default then to sell, etc., and out of the proceeds of sale to pay all notes then under indorsement or that should be indorsed by George Gibson, and also all notes indorsed or that should be indorsed by Joseph W. Jenkins; and also three certain notes of said E. C. Jenkins held by Joseph W. Jenkins, aggregating in amount the sum of $5,443; and, after paying all said notes in full, then to pay all general creditors of said E. C. Jenkins *pro rata;* and if anything should remain, then to pay the same to said E. C. Jenkins. This deed was executed in duplicate, and one copy of it given to the counsel of George Gibson, Mr. John Dunlop, who was also, as to the drawing of the deed, counsel of E. C. Jenkins. The other copy was given to Joseph W. Jenkins, a citizen and resident of Baltimore. At the time of the execution of this deed George Gibson was indorser for E. C. Jenkins to the amount of about $12,000; and Joseph W. Jenkins was indorser to the amount of about $5,000, and was holder besides of the three notes for the aggregate of $5,443 before mentioned.

E. C. Jenkins remained in possession of all the goods and stock in trade which he had on hand at the date of this deed, and continued to do so, and to buy and sell and carry on business in his firm name as if no deed had been executed.

John G. Spotts, the trustee named in this deed, was the business partner of George Gibson, and the places of business of Spotts & Gibson and of E. C. Jenkins & Co. were adjoining tenements in Richmond. John G. Spotts was not informed of the existence of the deed either by E. C. Jenkins, or by George Gibson, or by John Dunlop, counsel of Gibson and of E. C. Jenkins, the custodian of Gibson's copy of the deed. John G. Spotts did not know of the existence of the deed until the tenth of January, 1883, after the proceedings in this suit had been commenced. He then was made aware of its existence by receiving from Joseph W. Jenkins, in Baltimore, a letter inclosing his copy of the deed, and requesting him to record it at once. When he received this letter Spotts went to Mr. John Dunlop and showed him the letter of Joseph W. Jenkins, and left the deed with him. This deed was never recorded.

In the winter following the execution of the said deed of October 6, 1881,—that is to say, in February, 1882,—E. C. Jenkins, being under embarrassment, solicited and obtained an extension of notes falling due to the Mill Creek Distillery Company, complainants, and to the house of Maddux, Hobart & Co., petitioners in this cause. These notes amounted in the aggregate to about $7,000. The extension was granted on a promise by E. C. Jenkins, that, if anything should happen to him, he would secure these houses in the first class of preferred creditors. In the early part of December, 1882, E. C. Jenkins solicited and obtained from Shufeldt & Co., complainants, to whom he owed about $4,000, an extension of notes on a like promise. The evidence shows that George Gibson advised or was aware of the obtainment of these extensions, but does not show positively that he

advised or was aware of the promise which was made by E. C. Jenkins in connection with them.

Mr. Boudar, an expert in book-keeping, who, under an order of this court, has made examination of the business of E. C. Jenkins & Co., as shown by his books, reports that the house was behind on December 31, 1880, in liabilities over assets, to the amount of $11,196; that the excess on December 31, 1881, was $16,249; and that at the close of 1882 it was $18,252. In the period between October, 1881, and January, 1883, the indorsements of George Gibson for the house had increased from about $12,000 to $21,700. Those of Joseph W. Jenkins had diminished from about $5,000 to about $2,000.

On the twenty-sixth of December, 1882, Mr. John Dunlop, the counsel of Gibson, who had drafted the deed of October 6, 1881, and who held George Gibson's copy of it, after oral conference with E. C. Jenkins, wrote and delivered him the following letter:

"No. 1003 BANK STREET, RICHMOND, VA., December 26, 1882.

"MY DEAR SIR: You will have heard of the recent death of Mr. Bennett Dashiell, who was for so many years the confidential friend and clerk of Mr. George Gibson. Owing to Mr. Dashiell's death I am obliged to ask you to execute a trust deed to secure Mr. Gibson as your accommodation indorser on notes indorsed now by him for you. It is with great regret that Mr. Gibson now makes, through me, his counsel, this request of you; especially as your business promises so well at present, and Mr. Gibson would be the last person to affect, in any way injuriously, your credit. But Mr. Gibson's own health has not been very good of late, and the death of Mr. Dashiell makes him feel the necessity of closing up all matters outside of the firm of Spotts & Gibson. I unite with him in his great regrets, and remain, very sincerely, yours,

[Signed]                                                  "JOHN DUNLOP.

"*E. Courtney Jenkins & Co., Richmond, Va.*"

Three days afterwards, E. C. Jenkins wrote to the complainants the following letter:

"OFFICE OF E. COURTNEY JENKINS & CO.,
"113 South Fourteenth street,
"RICHMOND, VA., Dec. 29, 1882.

"*Mess. H. H. Shufeldt & Co., Chicago, Ill.*—DEAR SIRS: Will you be kind enough to telegraph bank here to hold, or return to you without protest, our note falling due on January 1st, (payable according to state law here on the 2d,) for $863? A *most unexpected demand*, occasioned by the misfortune of a relative, compels us temporarily to ask this indulgence of *all* our creditors; but we can show a statement which we hope will be satisfactory to all concerned, and you will hear from us, either in person or by letter, *at earliest possible moment*. Meantime, we only ask your confidence, and assure you that our intentions are honest to *all* parties, without preferences, and we believe we can establish this fact to your entire satisfaction. Regretting the necessity that occasions this request, and trusting that you will give us kindest consideration, we are,

"Very respectfully, yours,                    E. COURTNEY JENKINS & CO."

And on the succeeding day E. C. Jenkins wrote a letter, of which the following is a material part:

"OFFICE OF E. COURTNEY JENKINS & CO.,
"113 South Fourteenth Street,
"RICHMOND, VA., Jan. 3, 1883.

"*Mess. H. H. Shufeldt & Co., Chicago, Ill.*—DEAR SIRS: On twenty-sixth December we received communication, of which we inclose copy, from Mr. John Dunlop, of this city. On receipt thereof we urged upon Mr. Dunlop (who is our personal friend and at times business counsel) that the execution of such a deed, without previous consultation with our general creditors, would be very damaging to our future credit, and that we had rather make a deed not preferring Mr. Gibson, but allowing equal distribution *pro rata* for all concerned. We endeavored by delay and by personal appeal to effect this, and we meantime addressed letters to our several creditors interested, asking them to protect or to recall notes falling due in the interval between December 26th and January 10th, hoping that by the latter date we might be able to make some arrangement which would permit our active continuation of business and redemption of paper on which we had asked extension; and, as he has never realized a cent from the continued indorsement given us, but has been actuated solely by the kindest motives, we have felt *compelled* to submit to his request. We shall, by early mail, send you sworn statement of our assets and liabilities, and now write to request on behalf of the trustee, Mr. Irwin Watkins, our book-keeper for years past, that you will attend in person, if possible, or otherwise by proxy, a *general meeting* of our creditors, to be held here in our office, on *eleventh inst.*, (Thursday of next week.) We believe we can then satisfy you that this unexpected condition of affairs is the result of sheer misfortune, which will leave us penniless, unless, should consideration be shown, we may yet hold and control our established trade, which has amounted to from $100,000 to $125,000 per annum. Under present exhibit of our condition, however, we honestly assert that we would not presume to ask any credit whatever until *all* our creditors are convinced that our failure has been as great a loss to us as to them.   *  *  *

"Very truly yours,                    E. C. JENKINS & Co."

Letters similar to the last were written to other, and probably to all the principal, creditors of the house.

On the fifth of January, 1883, E. C. Jenkins executed a trust deed to Irwin Watkins, who was his principal clerk and his book-keeper, as trustee, in which were described, as parties of the third part, "the several persons, being *bona fide* creditors of the said E. C. Jenkins, who shall have executed and acknowledged this deed within 60 days from the date thereof;" and which required of these creditors so signing, "in consideration of the assignment [required by the deed] made for himself, and every one of them for themselves, respectively, [to covenant that he] doth hereby accept and take the property hereinbefore assigned and conveyed to said trustee for them, respectively, in full payment, satisfaction, and discharge of all their respective claims and demands against the said E. C. Jenkins, and doth by these presents relinquish, exonerate, discharge, and forever quitclaim to the said E. C. Jenkins" all claims and demands forever. The deed, after reciting that, whereas, George Gibson, Wm. F. Jenkins, of Richmond, Joseph W. Jenkins, of Baltimore, and the house of

Jenkins Brothers, of Richmond, had largely indorsed for E. C. Jenkins to enable him to carry on his business, and E. C. Jenkins has become embarrassed, and deems it necessary to make an assignment, goes on to convey to Irwin Watkins all the goods, wares, and merchandise, especially all the wines and liquors, and all office and store furniture and fixtures, now on the premises known as No. 113 South Fourteenth street, in the city of Richmond, and also all goods, wares, and merchandise of every description that may now be standing in the name of said E. C. Jenkins, or of E. C. Jenkins & Co., in the state of Virginia, or elsewhere in the United States, *in transitu*, or in any bonded or other warehouse; and also all bonds, bills, notes, securities, and vouchers, for or affecting the payment of money belonging to or held by the said E. C. Jenkins, on account of the sale of any goods, wares, or merchandise sold by him in or on account of said business; also all other rights, estate, interests, property, claims, and demands of money now due or to become due, of what nature or kind soever, in or on account of said business of distillers' agent and wholesale liquor dealer, and all rights, interests, property, claims, and demands that said E. C. Jenkins may have against Wm. F. Jenkins and the firm of Baldwin, Jenkins, etc., and that he may have by reason of any trust deed given by Wm. F. Jenkins to secure three certain negotiable notes described, and stated to have been drawn by E. C. Jenkins to accommodate Wm. F. Jenkins and indorsed by the latter, amounting in the aggregate to $5,443. The conveyance is in trust to collect, sue for, demand, receive, and recover all debts and demands due said E. C. Jenkins, and to sell and dispose of, at public auction or otherwise, all goods, wares, merchandise, and other property conveyed by the trust deed; and after paying costs, expenses, rents, taxes, salary of book-keeper, commissions of trustee, wages of servants, and for goods *in transitu*, shall pay and distribute the residue of proceeds of sales and collections in the following order, to-wit: To the payment—(1) Of all notes indorsed by George Gibson in full, as well those due as those becoming due. (2) Of all money now due said George Gibson or others on account of any loan or advance made to said E. C. Jenkins to enable him to carry on his business. (3) Of all notes indorsed by said Wm. F. Jenkins for E. C. Jenkins now due or hereafter to become due, believed to amount to $6,000; but this preference not to include the three notes before mentioned, aggregating $5,443. (4) Of all notes indorsed by Joseph W. Jenkins, believed to amount to $2,500. (5) Of all notes indorsed by Jenkins & Bros., believed to amount to $4,000. (6) And the balance of said proceeds to be applied to the payment of all claims of other creditors who shall come in and execute this deed within 60 days from the date thereof, *pro rata*, in proportion to the amount due to each of said general creditors, which payment is to be a full discharge of said E. C. Jenkins from the claims of the said general creditors.

This deed does not purport to convey anything but the property, choses in action, etc., belonging to E. C. Jenkins, as embraced in his business, as distillers' agent and wholesale liquor dealer. It does not purport to convey and does not convey any property owned and held by himself as an individual. But the evidence shows that he owned no property disconnected with his business except a small quantity of household furniture. It shows, however, that at the time of executing the deed of January 5, 1883, he took out of his cash in business the sum of $500; that on January 6th he loaned the business $200; and that on the 10th this latter sum was returned to him.

The evidence shows that, notwithstanding the clause in the deed of January, 1883, preferring in the second class of debts money due George Gibson or others "on account of any loan or advance," no money was, in fact, due to Gibson on loan.

There is no evidence to show that George Gibson personally authorized E. C. Jenkins, after the execution of the deed of January 5, 1883, to go on with his business, or knew, what was a fact, that he did go on with his business as if the deed had not been made; but the evidence shows that Mr. John Dunlop, the counsel of George Gibson, who had custody of the deed, was cognizant of and did not expressly object to this conduct. The deed of October 6, 1881, was never recorded, and was in the possession of Mr. John Dunlop, under a demand from Joseph W. Jenkins that it should be recorded, when the proceedings in this suit were commenced. The deed of January 5, 1883, was not put upon record until after the commencement of these proceedings, after the seizure of the effects of E. C. Jenkins by the marshal under the order of the court, made on the tenth of January, and after the meeting of creditors called by the circular letters of the third of January had convened. It was put upon record after 1 o'clock P. M. of the eleventh of January, 1883. From and after the fifth to the eleventh of January, 1883, when the marshal took custody, the business of the house went on as if there had been no deed. George Gibson's indorsements for E. C. Jenkins were made in mere friendship, and for no consideration cognizable in law. Mr. John Dunlop, counsel for George Gibson, and custodian for him of both deeds, was the draughtsman of both deeds.

The two deeds differed in one respect. Both conveyed the goods, wares, merchandise, wines, and liquors, as well those on hand as those to be received in the course of business; but only the latter deed, that of January, 1883, conveyed also the accounts, bills, and choses in action generally.

Amid the state of facts thus set forth, most of them unknown at the time to complainants and the court, the first bill in this suit was presented to the district judge. This original bill recited the contents of the letter of E. C. Jenkins to Shufeldt & Co., of the twenty-ninth of December, 1882, in which the latter were requested to withhold from protest a note of the former for $863.20, about to fall due on

the second of January, and in which promise was made that no preference would be given. It alleged that the note was withheld on the faith of that promise. It recited the contents of E. C. Jenkins' letter to complainants of the third of January, 1883, in which Jenkins stated that a deed of trust preferring George Gibson had been demanded by Gibson, and had been executed to Irwin Watkins as trustee, and in which the letter of John Dunlop to Jenkins, of the twenty-sixth of December, 1882, was referred to, and a copy of it was inclosed, and in which it was stated that the creditors of Jenkins were invited to meet in Richmond. The bill complained that the promise of E. C. Jenkins had been violated by the execution of this deed, after complainants had been induced by the letter of the twenty-ninth of December, and by the promise it contained, to withdraw from bank the note before mentioned, and that they had been lulled into security by the statements of the said letter, and that the execution of the deed was a fraud upon them. The bill charged that the trust deed, though executed, had not been put upon record, and that the business of the defendant Jenkins was going on as usual, at the usual place of business, with open doors. It alleged that this continuance of the business with the deed held in secret was a fraud upon the complainants and the other creditors, and that the deed, in consequence of its not having been recorded, was null and void as to complainants and other creditors. It charged that, by continuing the business after the execution of this deed, E. C. Jenkins was exercising a power incompatible with and operating to defeat the purposes of any deed designed to secure George Gibson, and that the deed was thereby void as to complainants and the other creditors. It charged that the deed was made to hinder, delay, and defraud complainants and the other creditors of E. C. Jenkins.

The bill called for an answer to all its allegations, but waived oath or affidavit. It prayed for an injunction and receiver. The court made an order directing the marshal to take the goods and effects of the house into custody, and restraining the defendants and all other persons from interfering with them. In the same order the court set the seventeenth day of January, 1883, for hearing the motion for a receiver and for an injunction. There was afterwards, to-wit, on the seventeenth of January, 1883, filed an amended bill based on the additional information disclosed by the deed when recorded. The amended bill set out that besides George Gibson, who was secured first of all, there were other creditors preferred, in different classes, and made these other persons defendants. It repeated the charges of the original bill, and charged further that the deed was fraudulent in that, without conveying, or purporting to convey, the whole of grantor's property, it required the general creditors of E. C. Jenkins, within 60 days, to sign the deed acquitting and relieving said Jenkins from all liability to them. This amended bill was filed before the hearing of the motion for a receiver, and was before the court at the hearing.

After full argument and on numerous affidavits, filed by complainants and defendants respectively, the court, on the twentieth of January, appointed a receiver, and awarded a preliminary injunction adapted to the circumstances of the case.

After this order was made, the evidence developed the existence of the deed of October 6, 1881. The complainants thereupon filed a second amended bill, reciting the facts connected with that deed, and among other things charged that, being still a subsisting deed, it was valid as between the parties to it; that the choses in action of E. C. Jenkins, which were the proceeds of the property conveyed by this, did not pass under the second deed to Irwin Watkins; that the deed was fraudulent as to complainants and other creditors, and prayed relief, etc. This last bill charges fraud by specific allegations against George Gibson and Irwin Watkins.

*John A. Coke* and *Edw. H. Fitzhugh,* for complainants.

*H. H. Marshal, Legh R. Page,* and *John Dunlop,* for defendants.

The case was heard before BOND and HUGHES, JJ.

BOND, J. It is my opinion, from a consideration of all the facts proven in this case, that the deed sought to be set aside by the bill was made purposely to hinder and defraud creditors, and that it was void as to the complainants, whether recorded or not. My brother HUGHES thinks that it was also void as to creditors because it was not recorded, and, as that is a question of construction of a Virginia statute, I propose to follow his judgment. But, in my opinion, the defendants acquired no interest in the property by virtue of the deed, whether recorded or not, as against the plaintiffs.

HUGHES, J. The decree in this suit must rest, of course, upon all three of the bills, more especially the two amended bills, and upon the evidence taken in the cause. The original bill may have been faulty; the order of court, given on the tenth of January, 1883, may have been ill-advised. Still, if the case on the amended bills be such as to entitle complainants to a decree, they would have it, despite of the defects of the original bill. I hold that the deed of January 5, 1883, is, in the eye of the law, fraudulent. It requires creditors to release the grantor within 60 days, and yet does not on its face purport to convey all the grantor's property for their benefit, or give other information tending to enlighten them in their choice. A deed imposing a release should show upon its face all that creditors ought to know, (*Gordon* v. *Cannon,* 18 Grat. 388;) and surely they have a right to be informed whether the grantor has assigned to them all his assets. The deed is fraudulent in law because it did not in fact convey all the grantor's property. The sum of $500 was withheld, and no mention of the fact made in the deed. A lot of domestic furniture was also retained without announcement in the deed. The law does not forbid the retention of a few hundred dollars by an insolvent grantor for paying small debts, when circumstances warrant the

measure, (*Skipwith* v. *Cunningham*, 8 Leigh, 271;) but the deed ought not to conceal the fact, as was done in this case, from creditors whom it requires to release. The fact should be frankly stated. It is not the value of what is retained that affects the *bona fides* of such a deed, but the concealment. This is a sort of fact that creditors who are called upon to release ought to be candidly informed of. Clauses requiring releases are hindrances to creditors, and are not favored. *Armstrong* v. *Byrne*, 1 Edw. Ch. 79, 81.

This deed was also rendered fraudulent in the eyes of the law by the fact that the business of E. C. Jenkins went on with open doors after its execution, and that the contingency of being allowed to go on permanently by the creditors was in this way anticipated by the grantor. It was a proceeding tending to coerce creditors into terms; for they might feel apprehensive that in the interval between the execution of the deed and the day of their meeting so many of the goods had been disposed of as to leave them no alternative but to accept the terms and give a release. Deeds imposing upon creditors the severe if not arrogant condition of release, should, besides placing them in possession of all information important to their decision, bring the trust fund to them intact, untouched, and in the precise condition in which it was when surrendered. To surrender it and then to assume control of it, besides being in appearance a contemptuous trifling with the rights of creditors, was a proceeding wholly incompatible with the purposes of such a deed as that under consideration. This deed, interpreted by the grantor's conduct, is similar to that condemned in *Spence* v. *Bagwell*, 6 Grat. 444. If a deed which expressly allows the business of grantor to go on is fraudulent *per se*, (*Addington* v. *Etheridge*, 12 Grat. 437,) then the carrying it on by the grantor, and the permission of it by the grantee, rendered this deed fraudulent as to all creditors.

I will not dwell further, however, on the case as presented by the amended bills, and the evidence taken upon the pleadings, but will confine myself almost exclusively to the case as it was presented to the court on the tenth of January, 1883, by the original bill, and by the correspondence which was filed with it as exhibits.

It is strenuously contended by counsel for defendants that the order made on the tenth of January, directing the marshal to take custody of the effects of E. C. Jenkins & Co., restraining the defendants from any interference with these effects, and appointing a day for hearing a motion for a receiver and for a preliminary injunction, was ill-advised; and that the original bill upon which that order was filed did not contain such averments as warranted the severe measure taken by the court. This question is no longer of any importance in the present case; but inasmuch as it is one of considerable importance in its relation to the practice of the court, I have given it very attentive consideration.

I think the objection is founded upon a mistaken conception of the

nature of the original bill. The two amended bills which were afterwards filed are bills to set aside the deed of January 5, 1883, as intended to hinder, delay, and defraud creditors, under the statute of Elizabeth embodied in section 1 of chapter 114 of the Code of Virginia. This statute, in order to the invalidity of a deed of assignment, makes it necessary for the grantee, if he be a purchaser for valuable consideration, to have had notice of the fraudulent intent of the grantor; and counsel for defendants insist that there is no express charge in the original bill of fraud or knowledge of fraud against George Gibson, one of the defendants. The fact may or may not be true that this bill makes no such charge, and yet the bill may, nevertheless, be sufficient for the purposes for which it was originally brought. This particular bill was not predicated upon the statute of Elizabeth. It is true that in the margin of the fifth page, as if by after-thought, the deed is charged to have been made with intent to hinder, delay, and defraud creditors. But that is not the *gravamen* on which the bill was framed, and on which the order of the court was asked for and granted.

The bill charges fraud in this, namely, that E. C. Jenkins, on a promise not to give preferences, had induced complainants to withdraw from bank a note falling due, and had, nevertheless, after obtaining the withdrawal of the note by such promise, made a deed of preference. It particularly charged that, notwithstanding a deed had been made, E. C. Jenkins was continuing to carry on his business at the same place with open doors, which was a fraud of itself; and the bill added that the deed was held in secret, was not put on record, and that this secreting of the deed and withholding it from registration was, besides being fraudulent, an act which rendered the deed null and void as to complainants and other creditors. The bill referred to the statute of Virginia, (section 5, *c.* 114, p. 897, Code,) which declares that every deed of trust, such as this of E. C. Jenkins, was null and void as to creditors until and except from the time that it is duly recorded, etc.

The right of a creditor at large to sue in equity, under section 2 of chapter 175 of the Code of Virginia, p. 1126, is not confined to suits under the statute of Elizabeth. The language of the section seems to refer rather to the language of section 5 of chapter 114, declaring deeds of trust, gifts, etc., null and void as to creditors until recorded. Section 2 of chapter 175 runs thus:

"A creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment, or transfer of or charge upon the estate of his debtor, which he might institute after obtaining such judgment or decree; and he may, in such suit, have all the relief in respect to said estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover."

The statute authorizes a creditor at large to bring a bill in equity for any cause of action on which he might obtain a judgment at com-

mon law or a suit in equity. The privilege of bringing suit is not confined to suits brought to set aside assignments made to hinder, delay, and defraud creditors. The original bill in this case, thus authorized, was based on the general proposition that a deed fraudulent on the part of the grantor was, as to a defrauded creditor, null and void, whether the grantee had notice of the fraudulent intent or not, so long as it was withheld from registration. The object of the complainants was, by *lis pendens* and actual custody, to establish a lien upon the effects of E. Courtney Jenkins & Co. before the deed was recorded. This was itself a legitimate object.

Upon the bill and the preliminary order of the tenth of January, which was given on the *prima facie* case it presented, two questions, therefore, arise; namely: *First*, whether the *lis pendens*, and the judicial custody of the goods established by the order, operated to prevent any valid registration of the deed on a later day, and any lien which registration, if made, might otherwise have created as to complainants; and, *second*, whether the fraud set out in the bill, supposing the bill not to have charged a knowledge of it on the part of George Gibson, was sufficient to justify the seizure by the court of the assets of E. C. Jenkins, and the closing of his place of business.

As to the first point, there can be no doubt that the *lis pendens* bound the property of E. C. Jenkins from and after the tenth of January, 1883. It has been held that a *lis pendens* in a United States court binds even real estate from the commencement of the suit, though not recorded as required by the laws of Virginia. *Rutherglen* v. *Wolf*, 1 Hughes, 78. It is also settled that a bill is a lien from the date it is filed, (*Wallace* v. *Treakle*, 27 Grat. 479;) and this lien gives priority to the complainants in the particular bill, not only as against the grantee, but as against all other creditors uniting by petition in the prayers of the bill. If, therefore, the original bill in this cause was founded upon a sufficient cause of action, and a decree be obtained upon it, it establishes a lien upon the effects of E. C. Jenkins from the date when it was filed. We have, therefore, only to inquire whether or not it did set out a cause of action entitling complainants to the decree they sought.

This deed, for all that the complainants knew of it on the tenth of January, 1883, when they exhibited their bill in court, might or might not have been embraced within the purview of section 1 of chapter 114 of the Virginia Code. It would probably have been more regular for the bill to have called for a production of the deed, and for a discovery by this means and by answer of its contents. Complainants did know, however, that it gave a preference to George Gibson; that Irwin Watkins was trustee; that E. C. Jenkins' place of business had not been closed upon execution of the deed; that this business was still going on; that such a fact itself rendered it fraudulent; that the deed was in the custody or control of George Gibson; that Gibson and Watkins knew that the business was going on fraud-

ulently in this respect; that the deed was withheld from record for the purpose, among others, of awaiting action by the creditors on the proposition whether or not the business should be continued; and they knew, finally, that the deed was, and would continue to be, null and void as to creditors until recorded. They charged these facts, and they did not expressly charge fraudulent intent, or knowledge of fraudulent intent, against George Gibson; doubtless because such a charge was not necessary to make good the case they were presenting to the court; and doubtless from a commendable reluctance to charge a respectable citizen with positive fraud, of which they could have no personal knowledge and did not know except by inference.

As before stated, bills may be brought in Virginia by creditors at large whether founded upon the statute of Elizabeth (section 1 of chapter 114 of the Virginia Code) or not. The statutory privilege of bringing them is not confined to cases embraced by that law. The section is itself but declaratory of the common law, and deeds may be assailed by creditors at large for many causes not embraced within its purview. Notably is this so in respect to assignments of choses in action in fraud or hindrance of creditors. The statute of Elizabeth declares void only gifts, assignments, or transfers of estate, real or personal, or charges upon them. It does not embrace choses in action. And yet it is well settled law that covinous assignments of choses in action are as liable to be set aside as assignments of property. See *Drake* v. *Rice*, 130 Mass. 410, and the many cases, English and American, there cited. It is equally as clear that deeds, whether *bona fide* or not, may be assailed before they are recorded. Being null and void as to creditors, if the creditors institute suit before registration, and the suit is conducted to a successful issue, the suit takes precedence of the registration, even though the deed be not fraudulent; and, so far as the deed is in conflict with the prayers of the bill, it is null and void. A deed may be free from fraud on the part of the grantor, or, if fraudulent as to him, may be free from fraud as to the grantee, and still, being void as to creditors until recorded, if assailed by a suit commenced before that event, though it may stand for all other purposes, it is null and void as to the purposes of that suit if the suit be sustained by the court in which it is brought. It was on this theory that the suit in this case was brought. It was not originally founded on the theory of setting aside a deed intended to hinder, delay, and defraud creditors. An allegation to that effect was indeed presented marginally in the bill as an after-thought; but the bill went primarily upon the theory that the deed operated as a fraud upon the complainants, and, if assailed by suit before its registration, might be set aside as null and void.

The charges set out by the bill were therefore sufficient to sustain the suit, notwithstanding the fact that it did not charge specifically against George Gibson a knowledge of the frauds of which it complained. It is true that the statute of Virginia, re-enacting that of

Elizabeth, does require such knowledge in the grantee; but the original bill under consideration charged a fraud not embraced in the statute of Elizabeth, and was founded upon another and a different statute, namely, that already cited, which declares all deeds of trust void as to creditors until recorded. Under this latter statute, I repeat, an unrecorded deed which is entirely free from fraud may be superseded and set aside as to creditors by a suit founded on sufficient cause of action, whether that be fraud or not, provided, always, that the suit be conducted to a successful conclusion.

As to whether the act of making an assignment preferring Gibson was fraudulent as between E. C. Jenkins on one side and Shufeldt & Co. and the Mill Creek Distillery on the other, I suppose there is no question. I do not think there can be. There was an appeal to Shufeldt & Co. in the letter of the twenty-ninth of December, 1882, coupled with a promise that no preferences would be given to their prejudice. There had also been a promise to the same house in the early part of December, 1882, that if notes to the amount of some $4,000, then due, were extended, no preferences would be given to their prejudice. There had been a promise to the Mill Creek Distillery Company as far back as the preceding February, in reference to a large bank indebtedness, that if an extension was given no preferences would be given to their prejudice. All these promises were made while the deed of October 6, 1881, was in existence, conveying all the property which these houses had furnished or should furnish to E. C. Jenkins, for the benefit of two other creditors. As between E. C. Jenkins and these creditors, the fraud was too palpable to need characterization. It was so flagrant as to invalidate any assignment which Jenkins might make to their prejudice, and which they might be able to intercept before the rights of other *bona fide* creditors attached. Here is the case of a fraud perpetrated upon the complainants particularly. It is a different case from those contemplated by the statute of Elizabeth, which refers only to cases of frauds perpetrated upon creditors as a class. When a particular creditor is aggrieved by a particular fraud wrought by a deed which as to him is void for want of registration, why should he not seek and obtain special redress through the instrumentality of a suit in equity assailing the fraud of which he complains, irrespectively of the question whether the beneficiary of the fraud is cognizant of it or not? Such was the case presented to the court on the tenth of January, 1883. That complainants had a good cause of action would seem undeniable. But of what avail to sue if the assets of their debtor should pass out of reach? A transfer of those effects had been made by an instrument which as to them was as yet void, and notwithstanding which the debtor was exercising the powers of ownership over them. They asked the court to lay its hands upon these goods. No violence would be thereby done to E. C. Jenkins, because he had by solemn deed assigned away the goods, and was estopped from objecting to a judicial seizure. Gib-

son, the beneficiary of the assignment, could not complain, because, as to complainants, his assignment was as yet void. *Vigilantibus non dormientibus jura subserviunt,*—it is the vigilant, not those who sleep on their rights, whom the law serves. And the court granted the order prayed for in the complainant's bill. The creditors in these two suits did succeed in bringing suit in time. They forestalled by suit the deed of January 5, 1883, before it was recorded, and while it was yet null and void. Their suit was brought for that purpose, and founded on section 5, and not on section 1, of the 114th chapter of the Code. It was brought in time. It was brought for a valid cause of action. It would stand and be sustained, and the relief sought would be given, even though the deed of January 5, 1883, were free from fraud.

I do not think, therefore, that the order of January 10, 1883, given by me at Alexandria, was improvident. The case was urgent. A trenchant order was necessary to the ends of justice, and it was given with entire confidence in its propriety. Sometimes harsh and prompt measures are the very essence of justice, and this is more especially so when they are necessary to save honest creditors from irremediable loss by the fraud and covin of others.