UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PROVIDENT MUTUAL LIFE INSURANCE
COMPANY,
Plaintiff-Appellee,

v.

CHANDRA K. KHASGIWALA,

No. 96-2011

Defendant-Appellant,

and

MUNNI CORPORATION; K-MART
CORPORATION,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-95-729)

Argued: March 6, 1997

Decided: April 16, 1997

Before MICHAEL and MOTZ, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Manley Allen, Jr., WRIGHT, ROBINSON,
OSTHIMER & TATUM, Richmond, Virginia, for Appellant. William

Lynn Thurston, BEALE, BALFOUR, DAVIDSON & ETHERING-TON, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Lynn L. Tavenner, WRIGHT, ROBINSON, OSTHIMER & TATUM, Richmond, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The question presented here is whether the district court erred in holding Provident Life Insurance Company was entitled to recover $553,683 from Chandra K. Khasgiwala under a theory of fraudulent conveyance when Provident had received full repayment of the underlying debt. We believe it did and so must reverse.

I.

The district court masterfully set forth the complicated underlying facts. See Provident Mut. Life Ins. Co. v. Munni Corp., Civ. No. 3:95 C.V. 729 (E.D. Va. June 21, 1996). Accordingly, we simply summarize them here.

Munni Corporation owned a mall that Provident Life Insurance Company had financed. In 1991 K-Mart Corporation, one of the property's main tenants, abandoned the property and began negotiations with Munni to terminate the remainder of its twenty-five year lease. Munni's loan agreement with Provident did not allow any alteration in lease terms without Provident's permission.

In August of 1994 Munni terminated its lease agreement with K-Mart in return for a payment of $555,683. Soon thereafter Munni transferred $555,000 of this payment to Dr. Khasgiwala, Munni's sole shareholder, officer, and director. Munni stopped paying Provident on

2

its loan in early 1995, and suggested that Provident foreclose on the property. At the time of Munni's default, it owed Provident $892,674 on the loan.

Provident foreclosed, and on May 9, 1995 Provident purchased the property at a public foreclosure sale for the sum of $938,084.73. After expenses the trustee credited Munni's account in the amount of $868,244.88, leaving $24,429.12 as the balance outstanding on Provident's loan to Munni.

Provident then filed this action against Munni, Dr. Khasgiwala, and K-Mart. (The district court denied K-Mart's motion for summary judgment, and that ruling is not before us.) Provident sued Munni for the costs and fees involved in the default and foreclosure, and for the fraudulent transfer. Munni and Provident settled these claims for $25,000. Accordingly, Munni no longer owes Provident anything -- Munni has fully paid the loan and all fees owed Provident because of the foreclosure.

Provident continued its suit against Dr. Khasgiwala for the fraudulent conveyance. Provident and Khasgiwala cross-moved for summary judgment. The district court held that the payment from Munni to Khasgiwala was a fraudulent conveyance, and awarded judgment against Khasgiwala for the full amount of the payment. Khasgiwala appealed to this court, and we now reverse.

II.

The first question is whether the district court correctly found that the payment from Munni to Khasgiwala was a fraudulent conveyance. Virginia law defines a fraudulent conveyance as:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. . . .

3

Va. Code Ann. § 55-80 (Michie 1995).

Munni's transfer to Khasgiwala was a fraudulent conveyance. The district court found that Munni was "insolvent at the time of the transfer" and "undercapitalized" with an "enormous debt." The transfer to Khasgiwala left Munni with $2,000 in cash and over $1 million in debt, with only the property as collateral. Munni accepted the payment and terminated the lease in clear violation of the loan agreement: Munni was required to obtain Provident's permission to alter the K-Mart lease in any way, let alone accept a $550,000 payment to break the lease. Lastly, after transferring all of its liquid assets to Khasgiwala, and devaluing Provident's collateral, Munni promptly defaulted on its loan.

Under these circumstances there can be little question that the payment from Munni to Khasgiwala was, as the district court found, a fraudulent conveyance. Given the size of the debt, the removal of virtually all of Munni's cash, and Munni's failure to inform Provident of K-Mart's lease termination, the transfer was intended to defraud creditors of money they were "lawfully entitled to."

III.

Khasgiwala does not dispute that the Munni payment was a fraudulent conveyance. Instead, he argues that because Munni has fully repaid Provident for its loan Provident has suffered no loss because of the conveyance. Indisputably, Munni has paid off its loan from Provident, and therefore the question we must answer is whether Provident is entitled to recover damages for the fraudulent transfer when it has been fully repaid on its loan. We conclude that Provident may not recover more than the amount owed on its loan under Virginia's law of fraudulent conveyance.

We begin with the language and history of Virginia's fraudulent conveyance statute. Section 55-80 "is itself but declaratory of the common law." Shufeldt v. Jenkins, 22 F. 359, 371 (E.D. Va. 1884); see also Hyman v. Porter, 37 B.R. 56 (Bankr. E.D. Va. 1984). The common law has prohibited fraudulent conveyances to prevent "debtors from making transfers that hinder, delay, or defraud their creditors . . . for over four centuries. A debtor cannot manipulate his affairs in

4

order to shortchange his creditors and pocket the difference." Douglas G. Baird & Thomas H. Jackson, Fraudulent Conveyance Law and its Proper Domain, 38 Vand. L. Rev. 829, 829-30 (1985); see also Joseph E. Ulrich, Fraudulent Conveyances and Preferences in Virginia, 36 Wash. & Lee L. Rev. 51, 52 (1979) ("The purpose of the law of fraudulent conveyances is to assist creditors, both individually and collectively, in realizing on their debts from the assets of a debtor.").

Virginia's codification of the common law of fraudulent conveyances similarly focuses upon protecting creditors from dishonest debtors. The statute applies to transactions intended to"delay, hinder or defraud creditors." Va. Code Ann. § 55-80. A creditor's recovery under § 55-80 is limited, however, to "what they are or may be legally entitled to." This is because the law of fraudulent conveyances is meant to protect the amount owed to creditors.

Thus, Provident's fraudulent conveyance claim only entitles it to recover the amount owed on the loan, and it would go well beyond the rationale underlying Virginia's law of fraudulent conveyance to allow Provident to receive more than it was owed. Furthermore, such a result cannot be squared with the statute itself, which allows relief only for "what [creditors] are or may be legally entitled to." Because Provident has already been fully recompensed on the loan it has received what it is "or may be entitled to."

Nevertheless, the district court held that Provident was still entitled to recover damages from Khasgiwala. The court relied upon the loan agreement between Munni and Provident, which provided that upon default by Munni, Provident "became entitled to receive" all rent. The court held that Munni's termination agreement with K-Mart constituted a default on the loan agreement and, therefore Provident became entitled to receive all rent and payments on the property, including the entire K-Mart rent payment that Munni had fraudulently conveyed to Khasgiwala.

The essential problem with this rationale is Provident's contractual right to rents was not absolute and unlimited. The loan agreement between Provident and Munni clearly provides that Provident must:

5

apply such rents, issues and profits to the payment of (a) the cost of all such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Premises and the management and operation thereof, and keeping the same property insured and (b) all taxes, charges, claims assessments, water rents and any other liens which may be prior in lien or payment to the mortgage debt, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby together with all costs and attorneys' fees, in such order of priority as to any of such items as [Provident] in its sole discretion may determine . . . .

In short, Provident had no right to rents and payments beyond the amount of its loan to Munni and the cost of maintenance of the property. When the loan was paid off, as it concededly was, the contract entitled Provident to nothing more. As such, Munni's violation of the contract does not create a right to any funds beyond the loan amount.

Provident argues that it grossly overbid for the property and that the value of the property, as determined by its appraisers, should govern in determining the amount Khasgiwala owes. No Virginia authority supports such a theory. In fact, the Virginia Supreme Court has held that a court may "rely on the amount of [an auction] bid as . . . evidence of actual market value." Jones v. Jones, 457 S.E.2d 365, 370 (Va. 1995).

Nevertheless, Provident urges us to follow Alliance Mortgage Co. v. Rothwell, 34 Cal. Rptr. 2d 700 (Cal Ct. App. 1994), aff'd 900 P.2d 601 (Cal. 1995). Alliance permitted a lender who had been fully repaid on its loan via a "full credit bid" (the lender used the entire amount owed on the loan as a "credit" to purchase the property) to sue a third party in fraud. Id. at 704-5. Provident argues that because it made a similar "full credit bid," it should be allowed to sue Khasgiwala.

We reject this argument for several reasons. First, even if Alliance provided direct and clear support for Provident's position here, we would be loath to adopt the rationale of a California case in this diversity case governed by Virginia law, absent some indication that a Vir-

6

ginia court would adopt such a rule. Provident cites no such Virginia authority.

Moreover, on examination, <u>Alliance</u> provides little support for Provident here. <u>Alliance</u> makes a strong distinction between actions for waste, where recovery is limited to the amount of the loan, and common law fraud actions, which allow damages beyond the amount of the loan. <u>Id.</u> at 705-7. Actions for fraudulent conveyance, like actions for waste, are limited to the amount the creditors "are or may be lawfully entitled to," and therefore <u>Alliance</u> does not apply.

Furthermore, <u>Alliance</u> only allows a lender to sue for the "actual damages" caused by the fraud, such as "losses from the sale of the foreclosed properties for less than the amount due on the loans and foreclosure expenses." <u>Id.</u> at 710. Provident has not alleged or proven that the fraudulent conveyance caused any damages beyond the amount of the loan, and Munni has fully recompensed Provident for the costs of the foreclosure and the loan. Provident's only possible "actual damages" arise from its own overpayment for the property. But, Provident has not claimed (nor could it) that this overpayment was a result of Khasgiwala's fraud. For these reasons, the judgment of the district court is

<u>REVERSED</u>.

7