## Staunton.

### ° GOLLEHON V. GOLLEHON AND OTHERS.

September 19, 1918.

°

Absent, Burks, J.

1. VENDOR AND PURCHASER—*Rights of Purchaser—Notice of Prior Claims—Complete Purchaser.*—One claiming to be a complete purchaser must aver "a valuable consideration and the actual payment thereof," and "must explicitly deny notice." If a subsequent purchaser receive notice of a prior conveyance or incumbrance before *both* of these affirmative acts are accomplished, he must forbear to proceed further until the equity is inquired into, or else he takes subject thereto. Whatever he does after notice is done *mala fide* and cannot avail him. And this is in consonance with justice as well as in strict analogy to equitable principles. It rests upon the reasonable maxim, *"qui prior in tempore, prior est in jure."*

2. VENDOR AND PURCHASER—*Rights of Purchaser—Notice of Prior Claims—Complete Purchaser.*—A wife suing her husband for divorce filed a supplemental bill making her husband's brother a party and alleging that her husband had conveyed his real estate to his brother with the fraudulent intent of relieving the land from the incumbrances that had been and thereafter might be fixed upon it in the divorce proceedings. The evidence showed that the brother had notice of the original suit for divorce, but did not fix upon him knowledge of or participation in the fraudulent motives and acts of the husband. The evidence showed, however, that the brother was not a *complete purchaser* of the land until after he was impleaded in the supplemental bill, as at that time he still owed a certain amount of the purchase money, and to that extent the permanent alimony allowed by the decree in the divorce suit constituted a charge on the land in his hands.

Appeal from a decree of the Circuit Court of Smyth county, in a suit for divorce and alimony. From the pro-

visions of the decree exonerating certain land from liability for alimony, attorney's fee and costs, complainant appeals.

*Reversed in part.*

The opinion states the case.

*S. B. Campbell* and *J. D. Perkins,* for the appellant.

*Jno. P. Buchanan,* for the appellees.

WHITTLE, P., delivered the opinion of the court.

This case is as follows: In March, 1915, Amanda Gollehon filed her bill against Ralph L. Gollehon for a divorce from bed and board on the ground of desertion, and for the allowance of suit money and alimony. The parties were married in October, 1910, in Bristol, Tennessee, at which time plaintiff was nineteen years old, and defendant was a soldier in the United States army. One child, a boy two years of age at the institution of the suit, was born of the marriage. The defendant had never lived with the plaintiff long at a time, being ordered from place to place, and had not contributed anything to the support of plaintiff and her child, except on one or two occasions when she visited him at points where he was temporarily stationed. In December, 1914, defendant abandoned and deserted plaintiff in the city of Roanoke, without cause, and she afterwards returned to her home in Smyth county. Defendant visited his relatives in that county, but did not go to see plaintiff, and endeavored to keep her in ignorance of his presence in the vicinity. About that time his father died intestate, leaving a valuable farm of two hundred acres, located in Smyth county, of which defendant inherited and had allotted to him a one-eighth interest. On March 5, 1915, a *lis pendens* was docketed in the divorce

suit to fix a charge on defendant's land for alimony, suit money and maintenance, and an injunction was awarded restraining him from disposing of the property. The defendant did not answer the bill, nor did he testify in the case; and on March 13, 1915, a decree was made continuing the injunction in force, and allowing $25.00 counsel fee. Thereupon defendant sought an interview with plaintiff and proposed a compromise of the suit. He informed plaintiff that he had imposed upon her; that they had never been married, and that their child was illegitimate. He then suggested that they should be lawfully married and thus remove the stigma of illegitimacy from their child; and promised to live with and maintain them.

Controlled by these considerations, and believing defendant's statements to be true, plaintiff finally consented, and on April 6, 1915, the remarriage ceremony was performed. Defendant, in the meantime, without the knowledge of plaintiff, had been negotiating with his brother, W. C. Gollehon, for the sale of the land; and, on the date of the remarriage, had procured a deed to be prepared by his attorney (of which fact she was ignorant) from defendant and herself, conveying the land to W. C. Gollehon for the consideration of $680. On April 12, 1915, she received a letter from her counsel advising her that he had been informed that she and defendant had adjusted their differences and were living together; and, if such was the fact, upon payment of the $25.00 attorney's fee and costs he would have the suit dismissed. These terms were never complied with; but on the following day plaintiff united with defendant in the execution of the deed to W. C. Gollehon, and two days later defendant again deserted plaintiff and removed to some point in the West. Since that time he has contributed nothing to her support, and has indicated no purpose to return.

Plaintiff then filed a supplemental bill, to which Ralph

L. Gollehon and W. C. Gollehon were both made parties, in which she set out the matters that had occurred since the original suit was brought. It was further alleged that the proposed compromise and remarriage were parts of a fraudulent scheme, in which both defendants participated, to enable Ralph L. Gollehon to sell and W. C. Gollehon to purchase the land in controversy relieved of plaintiff's marital rights and freed from the incumbrances that had been and thereafter might be fixed upon it in the divorce proceedings. The bill charged that plaintiff had been coerced into executing the deed by the violence and threats of Ralph L. Gollehon that he would take her life if she refused to comply.

On May 25, 1915, the case was heard as to Ralph L. Gollehon, who had been served with process, and plaintiff was decreed a divorce *a mensa et thore* from her husband, and accorded the custody of the child; and defendant was perpetually enjoined from interfering with such custody or with plaintiff in any manner. The court also, in addition to the $25.00 attorney's fee, decreed that defendant pay to plaintiff $650 permanent alimony, together with an additional attorney's fee of $50.00, and the costs of the suit. Afterwards the suit was matured as to W. C. Gollehon, who filed an answer, which he asked might be treated as a cross-bill, in which he alleged that he was a *bona fide* purchaser of the land and "had complied with the terms of the deed," and prayed that his land be discharged from the operation of any supposed lien or cloud on his title.

Plaintiff answered, taking issue on the allegations of the cross-bill; and on December 20, 1916, the court, upon the pleadings and evidence, passed the decree under review establishing the former decree for the sum of $25.00 and costs of suit, as a charge upon the land, and decreeing its sale for the satisfaction of the same unless paid within thirty days. But the decree exonerated the land from

liability for the other amounts decreed in behalf of plaintiff, as to which the bill was dismissed. To these adverse provisions of the decree this appeal was allowed.

The last clause of the decree presents the chief question for our determination. While the evidence shows that W. C. Gollehon had notice of the original suit for divorce, it does not, we think, fix upon him knowledge of or participation in the fraudulent and vicious motives and acts of Ralph L. Gollehon in procuring the second marriage ceremony and the execution of the deed. The evidence, however, does show that W. C. Gollehon was not a *complete purchaser* of the land until after he was impleaded in the supplemental bill and affected with the notice therein disclosed. At that time he still owed $249.00 of the purchase money, if, indeed, it has ever been paid. To that extent the permanent alimony allowed by the decree of May 25, 1916, constitutes a charge on the land in his hands in addition to the $25.00 and costs of the suit provided for in the decree under review.

The doctrine with respect to a "Complete Purchaser" is discussed by Professor Raleigh C. Minor in his work on Real Property with his usual accuracy and clearness. After stating that one claiming to be a complete purchaser must aver "a valuable consideration and the actual payment thereof," and "must explicitly deny notice," the learned author observes: "If the subsequent purchaser receive notice of the prior conveyance or incumbrance before *both* of these affirmative acts are accomplished, he must forbear to proceed further until the equity is inquired into, or else he takes subject thereto. Whatever he does after notice is done *mala fide* and cannot avail him. And this is in consonance with justice as well as in strict analogy to equitable principles. It rests upon the reasonable maxim, '*qui prior in tempore, prior est in jure.*' " 2 Minor on Real Prop., section 1409, and authorities cited. That is a well settled principle in this jurisdiction.

Upon these considerations we are of opinion to reverse the decree under review in so far as it holds that the land in controversy is not liable to payment of permanent alimony established in favor of appellant by the decree of May 25, 1915, to the extent of $249.00, with interest thereon from April 26, 1915, the date of the deed, until paid. We are further of opinion that inasmuch as the record shows that the appellee, Ralph L. Gollehon has wilfully deserted or abandoned his wife, the appellant, Amanda Gollehon, for three years, she is now entitled to a decree for a divorce from him from the bonds of matrimony.

The decree of the Circuit Court of Smyth county must, therefore, be reversed in the particulars indicated, and remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed in part.*