# Richmond

## E. C. TEMPLE v. JONES, SON & COMPANY, INC.

March 2, 1942.

Record No. 2476.

Present, All the Justices.

The opinion states the case.

*L. J. Hammack* and *B. A. Lewis*, for the appellant.

*Emerson D. Baugh* and *J. C. Hutcheson*, for the appellee.

Spratley, J., delivered the opinion of the court.

The original style of the case, in which this proceeding had its inception, was H. S. Culbreth, receiver of the Brunswick Bank & Trust Company v. E. R. Temple, et als. It was in the nature of a lien creditors' suit, instituted in March, 1938, for the purpose of subjecting the lands of E. R. Temple to the liens outstanding thereon. Jones, Son & Company, Inc., was not originally a party to the cause but became such by filing a petition therein on September 8, 1939, first, praying that a certain deed from E. R. Temple to E. C. Temple under date of February 17, 1938, conveying to E. C. Temple certain real estate located on Hull street, in the city of Richmond, be set aside and declared null and void, as having been made by E. R. Temple without consideration and with intent to hinder, delay, and defraud the petitioner; second, charging E. C. Temple with notice of the lien of petitioner's judgment; and, third, praying for a review of all decrees, if any, affecting its rights and other general and special relief.

On March 4, 1941, the trial court rendered a final decree setting aside and declaring null and void the questioned deed. Complaining that this decree was contrary to the law and the evidence, E. C. Temple applied for and was granted this appeal.

As Jones, Son & Company, Inc., so far as the record discloses, appears to be the only creditor interested in this proceeding, the present style of the case was adopted, E. C. Temple being hereinafter referred to as the appellant and Jones, Son & Company, Inc., as the appellee.

The bill of complaint, which the receiver, Culbreth, filed in March, 1938, sought the sale of all the property owned by E. R. Temple, including that which he had inherited from his son, H. D. Temple. It contained no allegation of a fraudulent conveyance of the Richmond property. The judgment of the receiver was docketed in Richmond prior to the recordation of the deed from E. R. Temple to E. C. Temple.

A decree of reference was entered April 28, 1938. On May 12, C. P. Temple filed a petition claiming a resulting trust against the Richmond property, superior to the title of his father therein, arising from certain alleged transactions between him and his deceased brother, H. D. Temple. On that same day, depositions were first taken, and C. P. Temple appeared and introduced evidence in support of his claim. The proceedings thereafter before the commissioner largely related to the question of the resulting trust and the true ownership of the Richmond property. The commissioner in chancery filed his report July 16, 1939. Culbreth, receiver, E. R. and C. P. Temple, severally, filed exceptions to the report.

The report listed the various properties of E. R. and H. D. Temple and liens against the property as they appeared of record. It did not undertake to pass upon the validity of the conveyance of the Richmond property by E. R. to E. C. Temple. In that connection, the commissioner stated that if the deed in which E. R. Temple conveyed the Richmond property to his son was declared void, the judgments against E. R. Temple were liens thereon; but that if E. C. Temple was a *bona fide* purchaser for value, the property was free of the liens of the judgments except that of Culbreth which had been recorded prior to the deed. Neither the exceptions to the commissioner's report nor the decree based thereon made any reference to this portion of the commissioner's report.

In passing upon the report, the trial court by its decree of July 31, 1939, refused to recognize the claim of C. P. Temple to a resulting trust of the Richmond property. It declared the judgment of Culbreth, the receiver, to be null and void and affirmed the validity of the appellee's judgment. It appointed special commissioners to sell certain described parcels of land of E. R. Temple, not including the Richmond property.

The president of the appellee corporation testified that he knew nothing of the creditors' suit, or any action therein, until about July or August, 1939, and that upon being ad-

vised of it, he employed counsel on August 14, 1939, to represent his firm. Its petition to intervene in the cause was filed on September 8, 1939, before any further action was taken in the cause with reference to the status of the Richmond property, and before the special commissioners qualified for the purpose of selling the other real estate. It is alleged in the petition that it could not have been filed with propriety until the claim of C. P. Temple to a resulting trust in the Richmond property had been adjudicated and determined.

It is necessary to set out somewhat extensively the surrounding facts and circumstances to get a true perspective of the case. The evidence is lengthy; but we gather from it the following material and pertinent facts:

E. R. Temple was eighty-three years of age in 1938 and had been a resident of Brunswick county for many years, living near the county seat of Lawrenceville. He had been married twice and had thirteen children. Included among the eight children by his first marriage were E. C. Temple, the appellant, and H. D. Temple.

E. R. Temple was, at one time, a prosperous and successful businessman. He had increased his property holdings to a value of $120,000, assisted by the sum of $4,000 which his first wife had inherited from her brother. His first wife died about the year 1912, and thereafter by a deed executed in 1926, he made, upon terms apparently satisfactory to all parties, a partition deed of his property and a general settlement with the eight children of his first marriage in satisfaction of their rights in their mother's estate and of their claims against him. To each of them he gave $10,000, or its equivalent in property, and retained $40,000, or its equivalent, for himself, his second wife, and his second set of children.

Beginning in 1927, E. R. Temple suffered large financial losses, principally through dealings in the cotton market. About 1930-31, he realized that he was insolvent and unable to pay his numerous creditors, although he still possessed several parcels of real estate. Some of his creditors obtained

judgments against him, and others, liens against his property, none of which he was able to satisfy. Included among the judgments, was one confessed in favor of Jones, Son & Company, Inc., docketed September 24, 1934, in the clerk's office of Brunswick county, for $5,148.57, with interest and costs; and another docketed in the same office on October 23, 1934, in favor of H. S. Culbreth, receiver of the Brunswick Bank & Trust Company, for $2,257.89, with interest and costs.

H. D. Temple was a bachelor about forty years of age and resided with his brother, C. P. Temple, in Brunswick county. He died intestate on February 13, 1938, leaving E. R. Temple, his father, his sole heir-at-law. At his death he possessed considerable real estate in Brunswick county and the house and lot on Hull street in Richmond, Virginia, hereinafter referred to, worth between $18,000 and $20,000. E. C. Temple held a note of H. D. Temple for $5,000, secured by a deed of trust against the Richmond property, dated July 26, 1927, upon which no interest had been paid after July 26, 1928.

On the morning of February 17, 1938, two days after the burial of H. D. Temple, E. R. Temple came to Lawrenceville with his brother, J. R. Temple, and his son, E. C. Temple. After several conferences between themselves and with an attorney, E. C. Temple was appointed and duly qualified as administrator of the estate of his brother, H. D. Temple. His nomination as administrator was upon the motion of E. R. Temple.

The attorney for the receiver, Culbreth, learning that H. D. Temple had died intestate possessing real property in the city of Richmond, and observing at the funeral and immediately thereafter numerous conferences between the Temples—E. R., J. R., E. C., C. P.,—and their attorney, and suspecting that some effort might be made to put the estate of H. D. Temple beyond the reach of the creditors of E. R. Temple, secured an abstract of the bank's judgment and had it docketed in the proper clerk's office of the city of Richmond, Virginia, on February 16, 1938, at 3:15 p. m. In

addition, he had a garnishment issued upon the same judgment and notice thereof served upon all of the above-named parties. Immediately thereafter he caused this suit to be instituted.

This attorney, on the next day, reported his action to E. D. Baugh, the attorney who obtained the judgment of Jones, Son & Company, Inc., against E. R. Temple.

On February 16th, or 17th, J. R. Temple conferred with Baugh with reference to making a compromise settlement of the appellee's judgment. On the same day, counsel for H. D. Temple asked Baugh to take up with his client the possibility of a settlement of the judgment and to let him know for what it could be settled. This Baugh agreed to do. While Baugh was sick at home the next day, he was asked by a friend if the Jones' judgment had been recorded in Richmond. Baugh then secured an abstract of the judgment and forwarded it by mail to be recorded in Richmond. It was recorded in Richmond at 9:45 a. m., on February 18, 1938.

In the meantime, on February 17th, E. R. Temple, in company with his attorney, drove from Lawrenceville to Richmond, a distance of seventy-eight miles, went to the office of the clerk of the Hustings Court, Part II, of that city, and prepared and recorded a deed at 1:15 p. m. of that day purporting to convey to E. C. Temple the Hull street property which E. R. Temple had inherited from his son, "in consideration of $10,000, due and owing by the said party of the first part, to the said party of the second part."

The wife of E. R. Temple did not join in the deed. After it was recorded, the original was mailed to the attorney for E. R. Temple. The deed was partially prepared in Lawrenceville, but it was completed in Richmond by adding the description. It was signed and acknowledged by E. R. Temple before the deputy clerk of Hustings Court, Part II. It was there learned by counsel for E. R. Temple that the Culbreth judgment had been recorded. This fact was made known to E. R. Temple; but, nevertheless, the deed was put on record.

It appears from the evidence that E. R. Temple did not

know of his right to inherit his deceased son's estate until he was informed by a stranger. He thereupon visited his attorney frequently and consulted him. He says he discussed his rights in the estate in the presence of E. C. Temple but did not inform the latter of his desire to secure or pay to him a long standing indebtedness, although he did communicate such intent to his brother, J. R. Temple, and to his counsel. His explanation for withholding the information from his son was that he was afraid to ask the amount of his indebtedness, and let his son know his financial condition, and was further afraid that he did not have a sufficient amount of property available to pay the debt in full.

No one attacks the intelligence of E. R. Temple; yet, his evidence is vague, evasive, contradictory, and confusing. He kept no record of the amount of his indebtedness to his son, and did not remember how it was created. At one time, he says that he thought he was executing a deed of trust to secure the indebtedness, and if the property brought more than the indebtedness, he was to have the benefit of the excess. Later he says he intended to convey the whole interest in the property to pay debts due his son as far as it would go.

E. C. Temple was also a successful businessman. He owned considerable real estate in Brunswick county and maintained his voting domicile there. He was engaged in the lumber business and estimated that he had accumulated an estate of from $50,000 to $100,000 between the years of 1915 and 1920. He seems to have been on cordial terms with his father and asserted that he had made him many loans from time to time without demanding any interest or re-payment, or saying anything to him about it.

According to the evidence of E. C. Temple given on January 4, 1940, the deed was executed and recorded without his knowledge or consent, and he knew nothing about it until some time afterwards. He said that although prior to the date of the deed, he did not know of the judgments against his father, he learned of their existence before he was in-

formed of the recordation of the deed; that he had not, until the day of his testimony in this case, discussed anything about the deed with his father or his father's attorney; that the amount of credit which he would give his father would be determined between them; that he would credit the deed with what he thought the property was worth; that he had not returned to his father the evidence of his indebtedness because "He didn't ask me for them and I haven't decided whether or not I am going to let him have them;" and that he considered the property as belonging to him.

The appellant lists five notes of E. R. Temple, as evidence of the indebtedness of the latter, which, with principal and interest, amount to $10,488.82.

The five notes were as follows: $2,500, dated February 8, 1926, secured by deed of trust on real estate; $1,000, dated December 24, 1924; $625, dated November 8, 1931; $2,500, dated February 24, 1924; and $1,000, dated June 5, 1930, originally payable to E. M. Goodrich and jointly made by E. R. and A. L. Temple. This note was credited with $300 from the anticipated net proceeds of a sale of a house and lot, under deed of trust given to secure the same.

All of the notes are of sufficient age to be barred by the statute of limitations. They were not listed for taxation from 1935 to 1937; but were included for taxation for the years 1938 and 1939.

It is very difficult to summarize briefly the evidence with reference to the indebtedness claimed to be evidenced by these notes. The evidence does show that E. C. Temple made some loans to his father; but there are many unexplained circumstances surrounding these notes and confusion both as to the consideration given therefor and the balance due thereon.

It is said that no payments of principal or interest were ever made upon the $2,500 note. Yet it appears that the deed of trust which secured its payment remained upon the records until January, 1934, when the property therein described was sold by the trustee for default in payment of the note and purchased by E. C. Temple for $1,700. E. C. Temple, however, denies that he caused the property to be sold

or ever discussed the subject of this property of the note with his father in any manner. E. R. Temple was under the impression that his son was not the noteholder at the time of the sale.

With reference to the note for $1,000, E. C. Temple testified that he did not consider it as being paid by virtue of the conveyance of the Richmond property, and that he did not intend to give his father a receipt for its payment.

There is some evidence that the $625 note, originally held by a bank, was to be paid by E. C. Temple as a part of the consideration in another transaction with his father. E. R. Temple remembers nothing about it except the fact that it bears his signature.

The $2,250 note was given for stumpage, with a specification on the note that it was to be credited with the proceeds from the manufactured timber. There is some question as to the location and ownership of the particular land from which the timber was to be cut. In addition to certain peculiarities with reference to the date and signature of the note, no good reason appears to have been given why the proceeds from the sale of the manufactured timber were not used in payment of the note. It seems at least unusual, considering the amount of this note, that the holder took no steps to follow its contract.

The fifth and last item for $1,000 is represented by a note dated June 5, 1930, made by E. R. Temple and his wife, payable to E. M. Goodrich. E. C. Temple claims to have paid the interest for seven years while the note was held by Goodrich; but no evidence of such payment was exhibited. The note is subject to a credit of $300 which is represented by the anticipated net proceeds from the sale of a house and lot under a deed of trust given to secure it. The note, however, in an earlier stage of this proceeding, had been proved as a lien against the property and later filed as a part of the consideration for the Richmond deed. The attorneys for the appellant now suggest that the deed of trust be marked satisfied and the note be included as a part of the consideration for the Richmond property. It further appears, however,

that E. C. Temple did not become the holder of the note until December 19, 1938, some time after the Richmond deed was recorded.

There is no conflict between the parties on the principles of law involved. The controlling principles have been settled by numerous decisions of this court. In *Fowlkes* v. *Tucker*, 164 Va. 507, 180 S. E. 302, and *Hutcheson* v. *Savings Bank*, 129 Va. 281, 105 S. E. 677, many cases dealing with the subject of voluntary and fraudulent conveyances have been cited and reviewed at length, and it is not necessary to make other than a general statement here.

It is fundamental in cases of this character that fraud must be clearly alleged, and proof of its existence must be clear, cogent, and convincing. The fraud must be concurred in by both the grantor and the grantee. Nevertheless, where facts and circumstances are shown which are sufficient to satisfy the conscience of the chancellor of the *mala fides* of the transaction, fraud may be inferred. It may be shown by actions which sometimes speak louder than words. *Hutcheson* v. *Savings Bank, supra; Crowder* v. *Crowder*, 125 Va. 80, 99 S. E. 746.

Except so far as prohibited by the Federal Bankruptcy Act, the law of Virginia does not prevent a debtor from preferring one of his creditors to another, provided there is no design between the debtor and creditor to secure some fraudulent advantage to the debtor. When fraud is charged, the question of a preference is a circumstance which, along with other circumstances in the case, will be taken into consideration in determining whether or not there has been an intent to defraud. *Surratt* v. *Eskridge*, 131 Va. 325, 108 S. E. 677.

The law does not prevent a father and son from dealing with each other. Relation by blood or marriage is not a badge of fraud. Yet, a suspicious transaction between parties related by blood or marriage, where the rights of third parties are concerned, calls for the closest investigation. When fraud is charged and the evidence is largely circumstantial, circumstances which among strangers would be com-

paratively unimportant must be closely scrutinized whenever intimate relationship is shown to exist. *Willis* v. *Blue Ridge Bank,* 153 Va. 392, 149 S. E. 624; *Haynes* v. *Bunting,* 152 Va. 395, 147 S. E. 211.

Evidence making out a *prima facie* case of fraud in a suit involving an alleged fraudulent conveyance causes the burden to shift, and it then becomes incumbent upon the defendant to establish the *bona fides* of the transaction. A *prima facie* case is made out usually by proving what is commonly known as *indicia* or badges of fraud, or by showing circumstances and conditions which, taken as a whole, are calculated to show fraud. If, from the relation of the parties and surrounding circumstances, a doubt is thrown around the payment of a debt, stated to be in consideration of the property, the grantor or grantee must prove the payment of the consideration and the *bona fides* of the debt and the conveyance, if the conveyance was made to pay debts due the grantee. The recitals in the deed are not alone sufficient to establish the fact of consideration.

In *Parr* v. *Saunders,* 1 Va. Dec. 724, 11 S. E. 979, this court said at page 731:

"A transaction may, of itself, and by itself, furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of the defendants, and even the evidence of witnesses. The circumstances attending and following a transaction are often of such character as to leave not even a shadow of doubt as to the real object and motive of the parties engaged in it. . . . Experience attests that in a majority of cases fraud can only be established by circumstances. The motives and intentions of the parties can only be judged of by their actions, and the nature and character of the transaction in which they are engaged. These often furnish more conclusive evidence than the most direct testimony."

While there have been many cases in this State on the subject of fraudulent conveyances, some upholding and others setting aside the conveyance, precedent is of little value because of the variance of facts. Each case must be determined upon its own peculiar facts and circumstances.

The cases of *Hutcheson* v. *Savings Bank, supra; Fowlkes* v. *Tucker, supra; Neff* v. *Edwards,* 148 Va. 616, 139 S. E. 291; and *Irby* v. *Gardner,* 157 Va. 132, 160 S. E. 81, are illustrative of the foregoing statement. In the first two, the evidence made out *prima facie* cases of fraud which was not satisfactorily rebutted. In the *Neff case,* the real contest involved the sufficiency of the consideration, but this was held to have been satisfactorily established. In the *Irby case,* the evidence showed the clear intention of the parties that the delivery of the deed was in complete discharge of a certain indebtedness.

Applying the foregoing principles, it is sufficient to say that the record shows a number of circumstances from which fraud may be inferred, especially as to E. R. Temple. The business between father and son was not conducted according to the accustomed uses of good businessmen, and common experience teaches us to reach unfavorable conclusions therefrom. The lender could not recall the circumstances of the alleged loans. He allowed them, in their entirety, to become out of date. He never raised any question of their payment, in whole or in part, even when his father was in a position to satisfy them. His actions did not indicate that he expected or intended them to be paid.

The appellant testified that he did not know of the judgments against his father at the time of the execution of the deed to him. However honest he may have been in making this statement, judged by standards of sound business practice, he was unusually careless and indifferent. While he did not reside all of the time in the same county with his father, he had business interests there, was frequently present there, and seems to have had the confidence of his father.

The insolvency of E. R. Temple at the time of the death of H. D. Temple is conceded, and the circumstances tend to show that every effort was being made to save the latter's property, or as much thereof as possible, for the use and benefit of the father. While negotiations for a compromise settlement of appellee's judgment were still in progress the deed was recorded in such haste that no effort was made to get

the grantor's wife to sign it. Nothing was said to E. C. Temple of the desire to prefer him, and no agreement was made as to the measure or acceptability of the consideration named in the deed. The father's act was voluntary and without the knowledge and consent of the son.

E. C. Temple says that the deed was executed without his knowledge or consent; that he did not know of it until a month or so thereafter; and that he had never seen the deed. He says that he had not talked with his father about it, and that the question of whether it would be accepted by him in full payment of his indebtedness was a matter to be determined by him and his father. He had not decided what evidences of indebtedness would be cancelled. This appears to be the key to a correct solution of the case. The father would save the property from his creditors by placing the legal title in the name of his son.

The exact purpose of the deed has not been satisfactorily explained, although pages of the depositions are filled with questions seeking to determine it. The explanations made are not of the character to be expected from intelligent businessmen, and we cannot be expected to go counter to the usual experience in giving weight to them.

The stale demands presented by the long overdue notes are seriously questionable. It is strange that they should have been thought valueless for the years 1935-1937, and, yet, of value in 1938 and 1939. Of course, if it had been intended to cancel and surrender them for the year 1939, the appellant should not have listed them that year for taxation against himself. This is contrary to usual and ordinary human nature.

The fact that the notes were not listed for taxation is not conclusive of their non-existence; but it is a circumstance which may be considered along with other facts. We may consider the failure to cancel and return the notes in the same light.

Considering all of the evidence, the transaction was unusual and remarkable, and there are no straightforward explanations. The inference that the father was seeking to gain

an advantage for himself, at the expense of his creditors, is irresistible.

The record shows that while the appellant desired to take advantage of the deed, he had never definitely determined to accept it in full satisfaction of all or any specific amount of the. claims which he asserted against his father. His subsequent acceptance, if any, came only after the appellee had asserted its rights against the property. *Gollehon* v. *Gollehon*, 123 Va. 504, 96 S. E. 769; *Lamar* v. *Hale*, 79 Va. 147.

"Payment of a debt involves both tender by the debtor and acceptance by the creditor, with the intention on the part of the debtor to pay the debt in whole or in part, and so accepted as payment by the creditor; * * * * *." *Hall Bldg. Corp.* v. *Edwards*, 142 Va. 209, 128 S. E. 521.

As a matter of fact, E. C. Temple learned of the judgments against E. R. Temple before he learned of the deed to him. In the second place, the evidence does not show that he has ever accepted the conveyance in satisfaction of the alleged indebtedness. He does not appear to be a complete purchaser. He did not take charge of the property and collect the rent until his attention was called to the matter by a tenant. When he collected the rent and income from the property, he deposited it in his administrator's account. This is inconsistent with personal ownership.

A consideration of all the facts and circumstances, coupled with the facts which we have stated, makes out a *prima facie* case, which has not been rebutted, that E. C. Temple was not a *bona fide* purchaser for value of the land conveyed to him by his father, and was not nor never had been a purchaser at all. The son, moreover, admittedly never accepted the property by any affirmative act before the rights of the appellee intervened.

The decree of July 31, 1939, did not pass upon the issue before us. That decree was interlocutory. It did not dispose of the whole subject, give all the relief that was contemplated, and leave nothing to be done by the court. The report of the commissioner made the matter of the ownership of the Richmond property an issue to be subsequently determined by the trial court. No exceptions were taken on that ques-

tion, and the July decree of the trial court did not undertake to pass upon that issue. The court merely confirmed a report containing alternative conflicting statements, reserving to itself the power of selecting by its future decree between such statements. *M'Candlish* v. *Edloe*, 3 Gratt. (44 Va.) 330.

The petition of the appellee, under the circumstances, was filed in due time, and the motion to dismiss it on the ground of laches and *res adjudicata* was without merit.

Right and justice, in our opinion, concur with the law in supporting the decision of the trial court. We find no error in its rulings and its decree of March 4, 1941, is, therefore, affirmed.

*Affirmed.*