### NEWCOMB *v.* MONTAGUE.

1. FRAUDULENT CONVEYANCES—BULK SALES ACT—SALES—EQUITY —JURISDICTION—JUDGMENT CREDITOR.

> The objection, in a suit to enforce a claim against purchasers of the business of plaintiff's debtor, who did not comply with the "sales in bulk" law, that the plaintiff should be denied the right to attack this conveyance of property because he was not a judgment creditor, his claim not having been reduced to judgment until about two weeks after the transfer was made, is without force; such objection should be raised by demurrer, it coming too late if made for the first time at the hearing.

2. SAME—MORTGAGES.

> The finding of the court below that a mortgage given by the debtor to his father was fraudulent, held, justified by the evidence.

3. SAME—MORTGAGES—LIENS—RELEASE.

> The giving of a bond by the father to the purchasers of the mortgaged property indemnifying them from any liability to him under his mortgage, in effect released the property from the lien created by his mortgage.

4. SAME—VALUE OF GOODS SOLD—EVIDENCE.

> Where the inventory of equipment and stock sold showed a value of over $2,300, and it was undisputed that $1,200 of the consideration was paid in cash, defendant's contention that plaintiff cannot recover because the value of the merchandise and fixtures did not exceed $400 cannot be sustained.

Appeal from Grand Traverse; Mayne, J. Submitted January 22, 1919. (Docket No. 87.) Decided April 3, 1919.

Bill by David B. Newcomb against Herbert B. Montague and others to discover property of defendant Montague to satisfy a judgment. From a decree for plaintiff, defendants appeal. Affirmed.

See notes in 39 L. R. A. (N. S.) 374; L. R. A. 1916B, 974.

*John J. Tweddle* and *Patchin & Duncan,* for plaintiff.

*M. W. Underwood,* for defendants.

As stated by counsel for plaintiff the bill in this case is in the nature of a bill for discovery to reach property of defendant Herbert B. Montague to satisfy an indebtedness of $764.10. In December, 1912, said defendant Herbert B. Montague entered into a contract with plaintiff for the purchase of a Buick roadster for the sum of $700. No payment having been made plaintiff brought suit in assumpsit on January 9, 1914, against defendant for the value of said automobile. Defendant Herbert Montague was the owner of a garage located at 116-118 State St., Traverse City, Mich. He was likewise the owner of an undivided interest in the firm of "Joseph A. Montague & Son." On March 3, 1914, defendant Herbert B. Montague gave a chattel mortgage to his father, Joseph A. Montague, covering all his stock in trade consisting principally of automobiles, automobile tires and accessories, as well as tools and garage equipment and all other property used in connection with said business. This mortgage was for the sum of $6,000 and covered besides the individual business of the defendant Herbert B. Montague, his interest in the co-partnership assets belonging to himself and his father, the mortgagee. This mortgage was given a few days before the first trial of the law case between plaintiff and defendant Herbert B. Montague which occurred at the March, 1914, term and resulted in a disagreement of the jury. The law case came on for trial again at the June term when on motion of defendant it was continued over the term on payment of the costs by defendant. The next term of court occurred early in October, 1914. On the 22d day of

205—Mich.—6.

September, 1914, defendant Herbert B. Montague executed a bill of sale covering the stock and fixtures of his garage business to four individuals who a few days thereafter organized a corporation for the conduct of the said business under the name of the West Michigan Garage Company. The consideration for this bill of sale was $2,500 of which $1,200 was paid in cash by the purchasers to Herbert B. Montague and $1,300 by the assignment of a land contract. No notice was given by Herbert B. Montague to plaintiff or his other creditors under the provisions of the sales in bulk act (Act No. 223, Pub. Acts 1905, 2 Comp. Laws 1915, § 6346 *et seq.*). On October 5th, a new chattel mortgage was executed by the son to the father for $6,000 covering only the son's interest in the partnership business. At the time the sale was made to the four individuals of the garage property, they were not advised of the existence of the chattel mortgage thereon for $6,000 running to Joseph A. Montague. They, however, learned of it soon thereafter and, as a result, Joseph A. Montague executed and delivered to the purchasers of said merchandise and fixtures a bond conditioned to—

"hold said obligees herein harmless from any cost, expense or payment of any sum or sums of money whatsoever by reason of their purchase of said merchandise, and agrees further to protect said obligees herein in their quiet possession and ownership of said stock as described and to secure to them the absolute and perfect title thereto from any claims or demands of any nature or kind whatsoever."

In the meantime and on October 6th, the law suit between plaintiff and defendant Herbert B. Montague was determined, resulting in a judgment in favor of the plaintiff for $764.10 and costs. At about the same time, defendant Joseph A. Montague took possession of the garage property, putting another son,

Gerald Montague, in charge thereof and undertook to foreclose the mortgage. A sale was made thereunder about October 18, 1914. Joseph A. Montague purchased the property at the sale and immediately thereafter executed a bill of sale to the West Michigan Garage Company or to the individuals who afterwards organized that company. No consideration was paid for the second bill of sale, it being understood that the transaction was in furtherance of the undertaking of Joseph A. Montague as evidenced by his bond given on the 8th of October. Thereafter the plaintiff caused to be issued a writ of *fi. fa.* in the law case against defendant Herbert B. Montague which was returned by the sheriff *nulla bona* on·February 10, 1915.

The bill of complaint herein was filed December 29, 1916. All the foregoing and many other facts are set forth in said bill and it is charged that the original mortgage of March 3, 1914, from defendant Herbert B. Montague to his father, Joseph A. Montague, was fraudulent and void; that the sale of September 22, 1914, was likewise fraudulent and wholly void as to plaintiff and all other creditors of the defendant Herbert B. Montague.

The court made a decree in the following terms:

"1. That on to-wit, during the summer of 1913, the defendant Herbert B. Montague was engaged in the mercantile business in Traverse City, Michigan, and that a part of his business was dealing in automobiles; that the plaintiff, David B. Newcomb, was the owner of a Buick automobile; that the plaintiff and defendant had certain dealings in regard to the purchase and exchange of automobiles, which dealings resulted in a fraudulent conversion of plaintiff's automobile by the defendant Herbert B. Montague, said automobile being of the value of seven hundred sixty-four and 10/100 dollars, and that thereby and previous to March 3, 1914, the said Herbert B. Montague was and continued to be a creditor of the plaintiff in the said sum of seven hundred sixty-four and 10/100

dollars, and that he had brought suit against the said Montague for the recovery of the said sum, which suit was then pending.

"2. That the said Herbert B. Montague was the owner of a one-third interest in a hardware business in the city of Traverse City, operating and doing business in the name of J. A. Montague & Son, J. A. Montague being the father of defendant Herbert B. Montague, and that on to-wit, the third day of March, 1914, while the defendant Herbert B. Montague owned a stock of merchandise and store furniture and fixtures and was carrying on a mercantile business in the city of Traverse City, he gave a chattel mortgage upon said stock of merchandise, store, furniture and fixtures, and his interest in the hardware business of J. A. Montague & Son to his father, Joseph A. Montague, defendant herein, to secure a claimed indebtedness of six thousand dollars. The said mortgage was given and placed on record at a time when suit by plaintiff against said Herbert B. Montague was pending in the circuit court for Grand Traverse county to recover the sum of seven hundred sixty-four and 10/100 dollars.

"3. That said suit brought to recover the said sum of seven hundred sixty-four dollars and ten cents, then pending in the circuit court for the county of Grand Traverse, was tried at the March, 1914, term of said court and resulted in a disagreement by the jury. That the said cause came on to be tried again at the June, 1914, term of said court, at which time the said defendant Herbert B. Montague made a motion for continuance of the said cause, which was granted by the court on terms that the said defendant Herbert B. Montague pay the costs to be taxed in said cause, which were taxed at the sum of twenty-nine dollars.

"That the said cause came on to be tried at the October, 1914, term of said court and that the said defendant Herbert B. Montague did not appear and contest the claim of the said plaintiff amounting to seven hundred sixty-four and 10/100 dollars; that on October 6, 1914, judgment was rendered in favor of David B. Newcomb, plaintiff in this suit, and against the said Herbert B. Montague, in the sum of seven hundred sixty-four and 10/100 dollars, and that the costs in said cause were taxed in the sum of ninety-

five and 90/100 dollars, none of which has been paid.

"4. That on, to-wit, the twenty-second day of September, 1914, the said defendant Herbert B. Montague being the owner of a stock of merchandise and store furniture and fixtures and carrying on a mercantile business in the city of Traverse City, upon the last mentioned date attempted and undertook to sell his stock of merchandise, office and store furniture and fixtures to certain parties composing the West Michigan Garage Company, a corporation defendants in this cause, without giving notice to his creditors as is provided in the "sales in bulk" statute of this State, and that no notice of the said attempted sale was given this plaintiff and other creditors of the said Herbert B. Montague, or by his would-be purchaser as the statute requires.

"5. That the said defendant Joseph A. Montague, and his son, Herbert B. Montague, being engaged together and owners of the J. A. Montague & Son hardware business, were closely and intimately associated in business relations; that no consideration for the mortgage dated March 3, 1914, passed at that time; that the said mortgage covered the interest of Herbert B. Montague in the business of J. A. Montague & Son, and also the stock of goods, wares and merchandise, furniture and fixtures in the mercantile business of the defendant Herbert B. Montague. That at the time of taking the said mortgage of six thousand dollars the said Joseph A. Montague knew that the plaintiff in this cause was a creditor of the said Herbert B. Montague, and that the said Joseph A. Montague, in order that he might assist the said Herbert Montague in making the sale of his stock of goods, wares, merchandise, furniture and fixtures, on to-wit, the twenty-second day of September, 1914, to the parties composing the West Michigan Garage Company, made, executed and delivered to the said parties, the West Michigan Garage Company, an instrument in writing, indemnifying the West Michigan Garage Company from any liability to him under his said mortgage of March 3, 1914, or in other words, releasing the said stock of goods, wares and merchandise, furniture and fixtures from the said mortgage lien, and with full knowledge of all the facts and circum-

stances connected therewith, thereby intending to release the said stock of goods in order that the said Herbert B. Montague could make a sale thereof, and thereby permitted and assisted the said Herbert B. Montague to sell and deliver the said stock of merchandise, office fixtures and furniture to the said parties composing the West Michigan Garage Company, and to collect the proceeds of said sale. The said indemnifying instrument, the court finds to be a release of the goods, wares and merchandise, office furniture and fixtures from the mortgage lien before sale, or an instrument made with intent to cover the defects of the illegal sale in fraud of creditors of Herbert B. Montague.

"6. That several days after the said West Michigan Garage Company had taken possession of the said goods, merchandise, office fixtures and furniture under the said pretended sale so made, the said Joseph A. Montague pretended to repossess himself of the said goods, merchandise, office furniture and fixtures by the pretense of putting his son, one Gerald Montague, in charge of the same at the store of the West Michigan Garage Company, where the said goods were located and kept for sale, and advertised the same for a sale under the chattel mortgage, which pretended sale took place on the fifth day of October, 1914, the day before judgment was taken by David B. Newcomb against Herbert B. Montague in the circuit court for the county of Grand Traverse to recover the said sum of seven hundred sixty-four dollars and ten cents and the costs connected therewith.

"That on said mortgage sale the said Joseph A. Montague bid in the goods for fourteen hundred and some odd dollars; he did not move them or do anything other than turn them over to the West Michigan Garage Company. No consideration passed for the said sale, but the consideration was the same consideration that passed between Herbert B. Montague and the said West Michigan Garage Company, and that on the same day, to wit, October 5, 1914; the said defendant Herbert B. Montague gave another chattel mortgage to the said defendant Joseph A. Montague for six thousand dollars, being the same pretended debt that was mentioned and set forth in the mortgage

that the said Joseph A. Montague undertook to fore-
close, which mortgage dated October 5th, covered the
interest of Herbert B. Montague in the hardware busi-
ness of J. A. Montague & Son and other property.

"7. That during the period of time while the chat-
tel mortgage dated March 3, 1914, was in process of
pretended foreclosure by the said Joseph A. Montague,
and while his said son, Gerald Montague, pretended
to be in charge of the property covered by the same,
all of the property enumerated in such mortgage and
the premises wherein the same was located, actually
remaining in the full use, possession and control of
the said West Michigan Garage Company and the said
company, in its own behalf, continued to operate in
the premises and use said property from day to day
in like manner as though no mortgage were in exist-
ence and without any regard for any pretended fore-
closure proceedings.

"8. That under the facts and circumstances in this
case the court finds that the mortgage given by Her-
bert B. Montague to Joseph A. Montague, on the third
day of March, 1914, was a fraud upon the creditors
of the said Herbert B. Montague, and was released
both as to Herbert B. Montague and the West Michi-
gan Garage Company by means of the instrument
given on September 22, 1914, in the form of an in-
demnity for the purpose of assisting in the illegal sale
as against the creditors of Herbert B. Montague in
violation of the "sales in bulk" act. And that if the
said Joseph A. Montague was a creditor of the said
Herbert B. Montague in good faith in the sum of six
thousand dollars, he was protected in the same by his
mortgage then secured on the fifth day of October,
1914, for that amount, being the only debt claimed by
him, from the said Herbert B. Montague.

"9. The court finds that the said Herbert B. Mon-
tague in executing the mortgage above mentioned to
his father, Joseph A. Montague, and in all of his do-
ings relative to the attempted sale of the said goods
and property, did not claim nor reserve any exemp-
tions to himself therefrom, and so mortgaged and at-
tempted to sell the whole thereof, and that the release
of the said property by the said Joseph A. Montague
from said mortgage was of the whole of the goods

and merchandise, furniture and fixtures of the Herbert B. Montague business, and that the said Herbert B. Montague made no claim for nor set aside any exemptions and has now no lawful exemptions in the said merchandise and fixtures.

"In consideration thereof, and on motion of John J. Tweddle and Patchin & Duncan, attorneys for the plaintiff, it is hereby ordered, adjudged and decreed:

"I.

"That from and after the date of the attempted sale of the said merchandise, fixtures and furniture, to-wit, September .22, 1914, the said West Michigan Garage Company became receiver of all of the said property, merchandise, furniture and fixtures so conveyed to it, and from and after that date has held the same and been accountable for the same as receiver thereof for the use and benefit of the said plaintiff and the creditors of the said Herbert B. Montague.

"II.

"That the said West Michigan Garage Company, as such receiver, is hereby decreed and directed to forthwith deliver to the said David B. Newcomb sufficient of the said property, merchandise, furniture and fixtures to make said sum of seven hundred sixty-four and 10/100 dollars, together with costs taxed in the sum of one hundred twenty-four and 80/100 dollars, and interest accrued and accruing to the date of such payment, and the costs in this suit to be taxed, and that in default thereof, within thirty (30) days after the entry of this decree that the West Michigan Garage Company pay to the said plaintiff, David B. Newcomb, the said sum above mentioned, amounting to eight hundred eighty-eight and 90/100 dollars and interest thereon at the rate of five per cent. from the date of such judgment and that the plaintiff have execution therefor."

From this decree defendants appeal.

Counsel for appellants state their contentions as follows:

"First. This plaintiff was not on September 22, 1914, such a creditor as this act contemplates.

"*Second.* If he was such a creditor he is estopped by the course he pursued after the sale by taking a judgment and after exhausting his remedy of law thereon, then bringing his action in equity and pursuing the same course or the same form of action as if no attempt had been made to collect such judgment.

"*Third.* That the mortgage of March 3, 1914, was a valid lien upon the property sold at the date of sale and that the mortgagee regularly foreclosed the same and acquired the title by such proceedings.

"*Fourth.* That subsequent to the 22d day of September, 1914, the said mortgagee did not by any act of his part with his lien or title to the property involved here until he gave the bill of sale to the purchasers.

"*Fifth.* That under plaintiff's theory in this case, granting a right to recover in this form of action, the value of the property sold to the West Michigan Garage Company that can be designated as merchandise and fixtures did not exceed $400.00. The exact computation of merchandise and equipment for fixtures as computed from the inventory, including the worthless stuff, was $380.57, divided as follows: Shop equipment or fixtures, $194.69; merchandise, $185.88. This statement is not challenged in this record, and is more favorable to the plaintiff than the real facts warrant. R. p. 77."

BROOKE, J. (*after stating the facts*). We are unable to agree with the contention of appellant that the plaintiff is denied the right to attack this conveyance of property in violation of the sales in bulk act because the transfer was made on September 22d and his claim was not reduced to judgment until about two weeks later, October 6th. The rule as stated in 20 Cyc. p. 421 is as follows:

"Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made or the secret trust created although their claims may not have matured or been reduced to judgment until after such conveyance." Citing cases.

In the case of *Coffey* v. *McGahey,* 181 Mich. 225, this court said:

"We find from the authorities it is not an inflexible rule that a judgment at law must be obtained by a creditor before resort to equity."

Plaintiff in the case at bar, however, did reduce his claim to judgment and exhausted his legal remedy thereunder before filing his bill. The claim of appellant that in the course taken, plaintiff is following a double remedy is without force. He proceeded in his law case to judgment. Defendant a few days before said judgment was taken transferred his property to the four individuals who afterwards organized the defendant West Michigan Garage Co. in violation of the sales in bulk statute. Plaintiff was not, as suggested by counsel for defendants, obliged at that time to discontinue his suit at law and file his bill in equity, but might very properly continue to judgment in the law case, thus fixing the legal liability of his debtor and then proceed in equity to establish the illegality of the sale which his debtor had recently undertaken to make without complying with the act.

What we have said above applies to the second claim of appellants, but in addition thereto it may be noticed that defendants answered issuably and took proofs upon the merits of the bill. They did not demur to the bill of complaint on jurisdictional grounds. Such an objection comes too late if made for the first time at the hearing of the cause. *Coffey* v. *McGahey, supra,* at page 229, and cases cited. See, also, *Humiston, Keeling & Co.* v. *Yore,* 181 Mich. 629.

With reference to the third contention the trial court found that the mortgage from son to father bearing date March 3, 1914, was given for a fraudulent purpose and that if any consideration for said mortgage existed it was covered by the mortgage of October 5,

1914, for the same debt; we are of opinion that the evidence fully justifies the opinion of the learned trial judge. It was given but a few days before the trial of the law case which had been pending for some weeks. The entire dealings of the defendants, father and son, with the garage property are such as to indicate a studied attempt on the part of both to place those assets beyond the reach of judgment creditors, including the plaintiff.

Touching the fourth contention, we are of opinion that by executing the bond in question the defendant Joseph A. Montague, in effect, released the garage property from the lien created by his mortgage. We have no doubt that the subsequent foreclosure of the mortgage was in furtherance of the general plan to defeat and defraud creditors. It is in evidence, too, that in foreclosing said mortgage the right of the defendant the West Michigan Garage Co. to continue the business was not abridged. A son of defendant Joseph A. Montague was nominally in possession, but the business proceeded as usual.

As to the fifth contention of appellant it may be said that the inventory of equipment and stock sold shows a value of something over $2,300. There is evidence that an exaggerated value was placed upon the stock and equipment, but that this was offset by an over-valuation of the land contract assigned in part payment thereof. There is no dispute that $1,200 of the consideration was paid in cash to the defendant Herbert B. Montague, and this sum is largely in excess of the plaintiff's claim. It may be noticed in passing that the decree charging the West Michigan Garage Co., as receivers, with the payment of the plaintiff's unsatisfied judgment will not affect that company by reason of the undertaking of the defendant Joseph A. Montague to hold the purchaser of the

garage property harmless by reason of any infirmity of title.

The result reached was proper and the decree is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.