**In re Roscoe Marvin PORTER,**
**Jr., Debtor.**

**Robert E. HYMAN, Trustee, Plaintiff,**

**v.**

**Roscoe M. PORTER, Jr., and Barbara E.**
**Porter, Defendants.**

**Bankruptcy No. 81–02167–R.**
**Adv. No. 82–0062–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 11, 1984.

58

James R. Sheeran, Richmond, Va., for plaintiff.

Robert A. Canfield, Jr., Richmond, Va., for defendant Barbara E. Porter.

John Allen Fox, Richmond, Va., for defendant Roscoe M. Porter, Jr.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This case came on before this Court upon the removal by Herbert Weisberger, a creditor of the debtor, to this Court of a chancery suit between himself and the defendants pending in the Circuit Court of Henrico County, Virginia. Subsequently, Robert E. Hyman, the trustee in bankruptcy for Roscoe M. Porter, Jr., was substituted as the plaintiff in this action and amended the complaint herein in order to state causes of action pursuant to 11 U.S.C. §§ 544 and 548. After notice and hearing, and upon the submission of briefs and stipulation of facts, this Court renders the following opinion.

## STATEMENT OF THE FACTS

The plaintiff's complaint seeks to avoid a transfer of real property located on Cornwall Road in Henrico County, Virginia (the Cornwall Road property) and a transfer of a diamond ring. Both properties were owned previously by the mother of Roscoe M. Porter, Jr. The properties were bequeathed and devised to the debtor upon the debtor's mother's death in 1978. In September, 1978, the debtor gave his wife the diamond ring. On August 3, 1981, the debtor transferred the Cornwall Road property to himself and to his wife as tenants by the entirety.

Roscoe M. Porter, Jr., Herbert Weisberger, and others formed a limited partnership in 1972 in order to raise venture capital to pursue the development of a parcel of commercial real estate. At that time, because Weisberger was the only member of the partnership with unlimited liability for the venture's obligations, Porter and the others agreed to indemnify Weisberger for 75 percent of any liability to which he might be exposed in the venture.

By 1977 the venture had failed and Weisberger incurred such liability. In November, 1978, Weisberger filed suit in the Circuit Court of Richmond, Division I, against Porter and one other individual to recover on the indemnity agreement. On January 23, 1981, the state court found Porter liable to Weisberger on the indemnity contract. A tentative settlement caused the parties to continue generally a hearing on the damages scheduled for July 23, 1981. Shortly thereafter, on August 3, 1981, Roscoe M. Porter, Jr. transferred the Cornwall Road property to his wife, Barbara E. Porter, and to himself as tenants by the entirety. This property was valued by Roscoe Porter in his bankruptcy petition at $88,000.00 and not contradicted by any evidence presented in this proceeding.

Subsequent to July 23, 1981, the parties abandoned the proposed settlement. On December 7, 1981 judgment was entered in favor of Weisberger and against Porter in the amount of $99,617.92. On December 9, 1981, Weisberger instituted a creditor's suit in the Circuit Court of Henrico County pursuant to *Va.Code* §§ 55–80 and 55–81 against the Porters seeking to set aside the conveyances of property by Roscoe Porter to his wife. The December 7, 1981, judgment was set aside on December 22, 1981, to permit Porter to file a brief.

On December 28, 1981, Roscoe Porter filed a Chapter 11 bankruptcy proceeding with this Court. Porter's Chapter 11 proceeding was converted to a case under Chapter 7 on February 24, 1982. On February 26, 1982, Herbert Weisberger and St. Paul Title Insurance Company filed an involuntary petition in bankruptcy against Roscoe Porter's wife, Barbara E. Porter.[1] Weisberger sought and obtained relief of the automatic stay of Bankruptcy Code § 362(a) from this Court for the purpose of concluding the damages segment of his state court action that had been set aside on December 22, 1981. On March 10, 1982, the Richmond Circuit Court again rendered judgment in favor of Weisberger and against Porter in the amount of $99,617.92, thereby establishing the amount of Porter's liability under the indemnity agreement. The creditor's suit pending in the Circuit Court of Henrico County was then removed to this Court on March 25, 1982.

The Porters testified that in consideration for the transfer of title to the Cornwall Road property they each executed wills in which they left their entire estate to each other. Also in consideration for the conveyance of the real estate, Barbara Porter gave her husband a one-half interest in an automobile and household items, all of which were valued at $2,245.00. Barbara Porter testified that Roscoe Porter would have transferred the house into both of their names even if she had not transferred anything of value to him in exchange. The

---

1. An order for relief was never entered. All hearings on the involuntary petition and Barbara Porter's answer thereto were continued by the parties. On November 12, 1982, upon motion by the petitioning creditors, this Court entered an order dismissing the involuntary petition against Barbara E. Porter.

Porters also claim that the real property transfer was made for the purpose of obtaining tax advantages, and that the timing of the transfer with the signing of the wills was the result of a belief that the Weisberger suit was settled and a sense of urgency to act promptly because they had been in an auto accident in April of 1981.

Roscoe Porter further testified that at the time of the conveyance of his interest in the real estate he believed that the Weisberger claim had been settled for $35,-000.00. Porter stated that on August 3, 1981, the date of the transfer of the Cornwall Road property, he had $47,000.00 in a trust account which he could have used to fulfill his obligation under the settlement agreement. He also testified that his financial condition was substantially the same at the time of the real property transfer as it was at the time of filing bankruptcy.

## CONCLUSIONS OF LAW

■ The plaintiff herein is now the trustee in bankruptcy who seeks to set aside transfers of both real and personal property by the debtor for the benefit of the creditors of the bankruptcy estate. As a basis of such recovery, the plaintiff alleges that certain transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1) and § 548(a)(2). The plaintiff also alleges that pursuant to § 544(b) these transfers are avoidable under *Va.Code* § 55–80 and § 55–81. The plaintiff asserts four separate grounds by which to avoid the transfers: (1) that the transfers were made with actual intent to hinder, delay, or defraud a creditor; (2) that the debtors received less than reasonably equivalent value in exchange for transfers made while insolvent; (3) that the transfers were fraudulent under state law; and (4) that the transfers were voluntary conveyances avoidable under state law.

*Avoidance under § 548 of the Bankruptcy Code*

Section 548 of the Bankruptcy Code, which (along with § 544) governs the trustee's powers to avoid fraudulent conveyances, provides in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

. . . .

Pursuant to 11 U.S.C. § 548(a)(1), the trustee may avoid a transfer of property that the debtor transferred with actual intent to hinder, delay, or defraud his creditors. This Court has held previously that when a debtor transfers real property from himself to his wife and himself as tenants by the entirety, it is a fraudulent conveyance avoidable under § 548(a)(1). *In re White,* 28 B.R. 240 (Bkrtcy.E.D.Va.1983).[2]

A similar result was obtained in *In re Loeber,* 12 B.R. 669 (Bkrtcy.D.N.J.1981). There, like in *In re White,* the bankruptcy court held that the debtor's transfer of real property titled in himself to his wife and himself as tenants by the entirety constituted actual fraud pursuant to 11 U.S.C. § 548(a)(1). This Court's decision herein and this Court's decision in *In re White* is bolstered further by case law holding that where a transfer is between related parties,

---

**2.** As an alternative ground for holding the transfer of real property by the debtor to himself and his wife as tenants by the entirety as fraudulent in *In re White,* this Court also found that the transfer was made by the debtor while insolvent and for less than reasonably equivalent value and, therefore, avoidable pursuant to 11 U.S.C. § 548(a)(2). 28 B.R. at 243–44.

the transfer is subject to close scrutiny and gives rise to a presumption of actual fraudulent intent where the transfer is without adequate consideration. *See, e.g., In re Loeber,* 12 B.R. at 675. This presumption establishes the trustee's *prima facie* case and shifts the burden of proof to establish the absence of fraudulent intent to the debtor. *Id.* Here, neither the debtor nor his wife has offered sufficient testimony to defeat the presumption of actual, fraudulent intent created because the transfer was between related parties and as discussed later, was without adequate consideration.[3] Therefore, this Court holds that the transfer from the debtor to his wife and himself as tenants by the entirety is avoidable pursuant to 11 U.S.C. § 548(a)(1).

■ The second basis upon which the trustee seeks to avoid the transfer of the Cornwall Road property is that the debtor was insolvent at the time of the transfer and received less than reasonably equivalent value in exchange. 11 U.S.C. § 548(a)(2); *In re Appomattox Agri-Service, Inc.,* 6 B.C.D. 1239 (Bkrtcy.W.D.Va. 1980). The debtor's wife transferred to the debtor a one-half interest in an automobile and some household items in exchange for his transfer of the Cornwall Road property to her and himself as tenants by the entirety. This Court notes, without further discussion, that the conveyance of a one-half interest in an automobile and household items, all of which were valued at $2,245.00 is not reasonably equivalent value for the tenants by the entirety interest in the property transferred by the debtor valued at $88,000.00. *See, Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir. 1980); *In re Thompson,* 18 B.R. 67 (Bkrtcy. E.D.Tenn.1982). Moreover, courts have held consistently that love and affection does not constitute value for purposes of § 548. *See, e.g., In re Treadwell,* 699 F.2d 1050 (11th Cir.1983); *In re Dante,* 1 B.R. 547 (Bkrtcy.N.D.Ga.1979). Therefore, if this Court finds that the debtor was insolvent at the time of the transfer, the trans-

fer may be avoided by the trustee pursuant to § 548(a)(2).

Courts have often relied upon the Bankruptcy Code definition of insolvency for purposes of § 548(a)(2) analysis. *See, e.g., In re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Texas 1982). Specifically 11 U.S.C. § 101(26) provides:

'insolvent' means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title;

A "debt" means a liability on a claim. 11 U.S.C. § 101(11). A claim under the Code is defined in § 101(4) which provides:

'claim' means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

When the definitions of 11 U.S.C. § 101 are applied to the insolvency provisions of § 548, the inescapable conclusion is that all liabilities contingent or otherwise must be considered in determining whether a debtor was insolvent at the time of the transfer in question. 4 Collier on Bankruptcy, ¶ 101.26 (1983).

The debtor listed assets totaling $338,-338.91.[4] From this amount $66,411.94 must

---

**3.** *See infra* page 61.

**4.** All figures cited herein are taken from the debtor's schedules and statement of affairs as

be subtracted because that amount was improperly scheduled twice. Also, for purposes of a solvency determination, the total amount of the debtor's claimed exemptions, $141,647.61, must also be subtracted from the debtor's total assets. 11 U.S.C. § 101(26)(A)(ii).[5] Therefore, the amount of the debtor's total assets relevant to a solvency determination herein is $130,279.36.

■ If the debtor's liabilities exceed $130,279.36 the debtor is insolvent for purposes of transfer avoidance pursuant to § 548(a)(2). The debtor listed total liabilities of $511,553.03. Adjustments to the amount of liabilities, however, must also be made. The debtor listed as a liability an endorsement he made for a $300,000.00 loan secured by certain real property allegedly valued at $400,000.00. Because an endorser has rights to the collateral securing such obligation, the value of the collateral must be considered in determining the amount of the debtor's liability. Accepting the debtor's valuation of the collateral for purposes of argument here, the amount of the debtor's total liabilities is reduced $300,000.00 bringing the total to $211,553.03.

This Court knows of no other, nor has it been made aware of, any other appropriate adjustment in the debtor's financial structure for purposes of an insolvency determination. Therefore, taking the evidence in the light most favorable to the debtor, this Court concludes that the debtor had total assets of $130,279.36 and total liabilities of $211,553.03 at the time of filing bankruptcy.

These facts coupled with the debtor's own testimony that his financial status at the time of the transfer of the Cornwall Road property was substantially the same as that at filing for bankruptcy leads this Court to conclude that the debtor was insolvent at the time of the transfer in question here. Having previously held that the transfer was not for reasonably equivalent value, the elements of § 548(a)(2) are established and the transfer is thereby avoidable.

*Avoidance under State Law*

■ In addition to the bases existing under the Bankruptcy Code for the trustee to avoid the transfer of the Cornwall Road property, the trustee also alleges avoiding powers pursuant to § 544(b). Section 544(b) provides in pertinent part:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable only under section 502(e) of this title.

Pursuant to § 544(b), because Weisberger holds an unsecured claim that is allowable under § 502(e) of the Bankruptcy Code, the trustee may accede to the avoiding powers available to that creditor under state law. Specifically, the trustee alleges that the transfer of the Cornwall Road property is avoidable under *Va.Code* § 55–80 as a fraudulent conveyance and under *Va.Code* § 55–81 as a voluntary conveyance. In addition, the trustee alleges that the transfer of the diamond ring by the debtor to his wife is avoidable as a voluntary conveyance under *Va.Code* § 55–81.

Section 55–80 provides in pertinent part: Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal ... with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from that they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons, their representatives or assignees be voided. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of the granter.

*Va.Code* § 55–80 (Repl.Vol.1981).

The statute is merely declaratory of the common law, *Shufeldt v. Jenkins,* 22 F. 359

---

filed in this court and admitted into evidence as plaintiff's Exhibit # 2.

**5.** In addition, the property allegedly transferred in fraud of creditors is not considered in deter-

mining whether the transferor was insolvent. 11 U.S.C. § 101(26)(A)(i); *Lincoln Theatres Corp. v. Fleming,* 66 F.2d 441 (4th Cir.1933).

(4th Cir.1884) and, stated simply, provides that a fraudulent conveyance is voidable. *See Fidelity & Deposit Co. v. Studds* 136 F.Supp. 756 (E.D.Va.1956); *Norris & Co. v. Jones*, 93 Va. 176, 24 S.E. 911 (1896).

■ To come within the scope of *Va. Code* § 55–80, the transfer or act assailed must be done with intent to hinder, delay or defraud. 9A M.J., *Fraudulent and Voluntary Conveyances*, § 12 (Repl.Vol.1977). Because of the difficulty of establishing "actual intent", evidence of fraud may be, and generally must be, circumstantial. *Fowlkes v. Tucker*, 164 Va. 507, 180 S.E. 302, 305 (1935); *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 105 S.E. 677, 680 (1921); *Witz, Biedler & Co. v. Osburn*, 83 Va. 227, 2 S.E. 33 (1877). Consequently, without differentiating between delaying, hindering or defrauding, courts have relied historically upon presumptions of fraud, known also as "badges of fraud," which consist of facts and circumstances which the law admits to be the signs of fraud; and from which the fraudulent intent may be inferred. *See, In re Decker*, 295 F.Supp. 501 (W.D.Va.1969), *aff'd sub nom. Woodson v. Gilmer*, 420 F.2d 378 (4th Cir.1970); *Herring v. Wickham*, 70 Va. (29 Gratt.) 628 (1878).

The badges of fraud have been stated to include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance. *See Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 105 S.E. 677 (1921). *See generally, Enforcement of Judgments and Liens in Virginia*, § 7.3 at 315 (Rendleman ed. 1982).

■ The party seeking to avoid a fraudulent conveyance may shift the burden of proof by establishing a *prima facia*

case of fraud. *First National Bank of Bluefield v. Pressley*, 176 Va. 25, 10 S.E.2d 526, 527 (1940). Moreover, a prima facia case is established by demonstrating a badge of fraud. *Temple v. Jones, Son & Co.*, 179 Va. 286, 19 S.E.2d 57, 62 (1942). In the instant case, the trustee has established four of the badges of fraud. First, the debtor retained an ownership interest in the Cornwall Road property after the transfer. Second, as discussed above,[6] the transfer of the Cornwall Road property was not for adequate consideration. Third, the transfer was at a time the debtor was being pursued by his creditors. Finally, the transferor remained in possession and control of the property after the transfer.

■ Neither family relationship between the transferor and the transferee by itself nor insolvency standing alone is a badge of fraud. *See, Fowlkes v. Tucker*, 180 S.E. at 305. However, the Virginia Supreme Court has stated that "where the transaction assailed is between ... near relatives, only slight evidence is required to shift the burden of showing its bona fides." 180 S.E. at 305. In addition, the Virginia Supreme Court has often stated:

A transaction may of itself, and by itself, furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answers of the defendants, and even the testimony of witnesses.

*Id.; see also, Hutcheson v. Savings Bank of Richmond*, 105 S.E. at 680. Finally, insolvency taken together with other circumstances may show sufficiently fraudulent intent. *McClintock v. Royall*, 173 Va. 408, 4 S.E.2d 369 (1939).

■ Fraud should be inferred when the facts and circumstances are such as would lead a reasonable man to the conclusion that a debtor has attempted to withdraw his property from the reach of his creditors with the intent to prevent them from recovering their just debts. If such fraudulent intent is thus established *prima facia*, it must be regarded as conclusively established unless rebutted by facts and circum-

6. See *supra* page 61.

stances which are proven. *Land v. Jeffries,* 26 Va. (5 Rand.) 599 (1827); *Keagy v. Trout,* 85 Va. 390, 7 S.E. 329 (1888).

Considering (1) that the plaintiff has established at least four badges of fraud (retention of an ownership interest, inadequacy of consideration, pursuit by a creditor, and retention of possession); (2) that the plaintiff need only show slight evidence to shift the burden to the defendant (because the transaction was between husband and wife); (3) that the nature of the transaction itself (here a transfer from husband to wife while a creditor's suit to reach the property was pending and while the husband was insolvent) has often served as sufficient proof in a fraudulent conveyance action; and (4) in light of the Court's earlier discussion, it is particularly compelling that the burden shift to the debtor and his wife to establish that the transaction was indeed fair.

This Court is satisfied that the debtor and his wife have failed to carry their burden with respect to the fairness or bona fide nature of the conveyance of the Cornwall Road property. In justification of the conveyance, the debtor and his wife have argued that the transfer was made for tax planning purposes and that the conveyance was for adequate consideration. The consideration alleged is a one-half interest in her automobile and a one-half interest in some household goods. In addition, the debtor and his wife testified that the signing of reciprocal wills was partial consideration for the conveyance.

This Court does not believe that adequate consideration exists. The personal property transferred to the debtor in exchange for the conveyance of a one-half interest in tenants by the entirety property (the Cornwall Road property is valued at $88,000.00) was worth just over $2,000.00 in value. Moreover, although the Porters allege that the signing of reciprocal wills constituted consideration for the conveyances of the real property, this Court has not been shown sufficient evidence for the Porters to establish their burden of persuasion in this regard. Rather it appears that the signing

of reciprocal wills was more a result of the Porters' fears after a recent automobile accident, and did not constitute consideration for the real property conveyance. In addition, the debtor's wife testified that she would have transferred the interest in the automobile and the household goods to the debtor without the corresponding conveyance of the Cornwall Road property. These facts lead this Court to conclude that there was no adequate consideration for the conveyance of the real property. Having failed to establish any other evidence supporting the bona fide nature of the conveyance, this Court holds that the debtor and his wife have failed to carry their burden of proof in this matter and consequently, fraud is conclusively established.

A number of Virginia cases require that to set aside a conveyance under *Va.Code* § 55–80 the fraudulent intent of the grantee must also be proven. Like the proof required of the grantor's or transferor's intent, the creditor need not prove the grantee's or transferee's intent by direct evidence.

> It is sufficient that the grantee had knowledge of the facts and circumstances which would have excited the suspicion of a man of ordinary care and prudence and put him upon inquiry as to the bona fides of the transaction, which inquiry would necessarily have lead to a discovery of the fraud of his grantor.

9A M.J., *Fraudulent and Voluntary Conveyances,* § 14 (Repl.Vol.1977). Often parties to a suspicious transaction are charged with the intent of the transferors because of the relationship between the transferee and the transferor. *See, Darden v. George G. Lee Co.,* 204 Va. 108, 129 S.E.2d 897 (1963); *Temple v. Jones, Son & Co.,* 179 Va. 286, 19 S.E.2d 57 (1942). In addition the Supreme Court of Virginia has stated:

> It is well settled in a long line of Virginia cases, as a general rule, that transactions between husband and wife must be closely scrutinized to see that they are fair and honest, and not merely contrivances resorted to for the purpose of placing the husband's property beyond the reach of

his creditors. In a contest between the wife and her husband's creditors, the burden of proof is upon her to show satisfactorily the bona fides of the transaction. While in all such cases, the presumptions are against the wife, and in favor of the creditors, the presumptions may be repelled.

*First National Bank of Bluefield v. Pressley,* 176 Va. 25, 10 S.E.2d 526, 528 (1940).

This Court is satisfied from the circumstances surrounding the transfer of the Cornwall Road property and from the nature of the transaction itself that the grantees should be charged with the fraudulent intent required by *Va.Code* § 55–80. Consequently, this Court holds that the transfer of the real property on Cornwall Road from Porter to himself and his wife as tenants by the entirety is voidable pursuant to *Va.Code* § 55–80.

■ The final basis alleged by the trustee for avoiding the transfer of the real property on Cornwall Road is that the transfer is voidable pursuant to *Va.Code* § 55–81. The trustee utilizes the rights possessed by creditors under state law pursuant to 11 U.S.C. § 544(b). *Va.Code* § 55–81 provides in pertinent part:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely be void as to creditors whose debts shall not have been contracted or as to purchasers who shall have purchased after it was made . . . .

*Va.Code* § 55–81 (Repl.Vol.1981).

Unlike § 55–80, § 55–81 does not require finding of an intent to hinder, delay or defraud on the part of the grantor or grantee. 9A M.J. *Fraudulent and Voluntary Conveyances,* § 65 (Repl.Vol.1977). If the conveyance was without consideration deemed valuable at law, the conveyance is void as to a creditor whose rights existed at the time of the transfer. As stated by the Supreme Court of Virginia in *Snydor v. Grand Staff,* 96 Va. 473, 31 S.E. 647 (1898), the enactment "was intended to defeat frauds perpetrated upon existing creditors by the marriage of an insolvent debtor, accompanied by gifts to his wife." 31 S.E. at 648. Therefore, a creditor of the Porters existing at the time of the conveyance of the real property on Cornwall Road may avoid the conveyance if such conveyance was for consideration not deemed valuable at law.

■ This Court has previously determined that the conveyance of the Cornwall Road property was not for adequate consideration.[7] That determination is equally applicable to the Court's consideration of *Va. Code* § 55–81. Therefore, if a creditor exists that was a creditor of Roscoe Porter prior to August 3, 1981 (the date of the conveyance of the Cornwall Road property) then the conveyance is avoidable.

At the very least, Herbert Weisberger became a creditor of the Porters on January 23, 1981, when the issue of Porter's liability under the indemnity agreement was decided by the state court. Arguably, Weisberger was a creditor of the debtor at the time the indemnity agreement was entered between the parties. With regard to the transfer of the Cornwall Road property, however, this Court need not determine whether a party holding a contingent liability is an "existing creditor" for purposes of *Va.Code* § 55–81.[8] The state court's decision on January 23, 1981, conclusively established that Weisberger was a creditor of the debtor. Therefore, the conveyance of the Cornwall Road property from the debtor to himself and his wife as tenants by the entirety for inadequate consideration would be voidable by Weisberger, and pursuant to 11 U.S.C. § 544(b) is thereby avoidable here by the trustee as plaintiff.

---

**7.** See *supra* page 61.

**8.** See *infra* notes 66–67 and accompanying text for discussion of who is an existing creditor under *Va.Code* § 55–81.

■ A final issue remaining before the Court is whether the transfer of the diamond ring inherited by the debtor and transferred to his wife is avoidable by the trustee herein. The debtor gave his wife the diamond ring in question here in September of 1978. The debtor filed bankruptcy in this Court on December 28, 1981, more than three years after the transfer of the diamond ring. That fact alone is a sufficient basis for dismissing the trustee's avoidance actions pursuant to 11 U.S.C. § 548 because that provision limits the trustee's avoiding powers to those transfers or conveyances made within one year of the debtor's filing of bankruptcy. *See* 11 U.S.C. § 548(a).

Pursuant to 11 U.S.C. § 544(b), however, the trustee may utilize certain rights that creditors of the debtor may have under state law. Therefore, if the transfer of the diamond ring is avoidable by a creditor under *Va.Code* § 55–80 as fraudulent or under *Va.Code* § 55–81 as voluntary, then the trustee may avoid the transfer pursuant to his rights under 11 U.S.C. § 544(b).

A major benefit of the trustee's powers pursuant to 11 U.S.C. § 544(b) is that he may avail himself to the state law statutes of limitation. Under Virginia law, a fraudulent conveyance has no specific statute of limitation. Rather, as a suit in equity a fraudulent conveyance is governed by the concept of laches. *Atkinson v. Solenberger,* 112 Va. 667, 72 S.E. 727 (1911). However, under Virginia law a voluntary conveyance has a statute of limitation of five years. *Va.Code* § 8.01–253; *see In re Abingdon Realty Corp.,* 21 B.R. 290 (Bkrtcy.E.D.Va. 1982); *Flook v. Armentrout's Administrator,* 100 Va. 638, 42 S.E. 686 (1902).

■ Without addressing the issue of whether the trustee's action pursuant to § 55–80 is barred by laches, this Court concludes that the transfer of the diamond ring from the debtor to his wife is not a fraudulent conveyance. Although some of the badges of fraud may exist in this regard,

the Court is satisfied that no intent to hinder, delay, or defraud the creditors was involved in the transfer of the diamond ring from the debtor to his wife. Rather, the act was simply a logical and natural act by a man inheriting a diamond ring from his mother. With regard to the possible shifting of the burden of proof because one of the badges of fraud may exist here, this Court concludes that the parties demonstrated the bona fide nature of the transfer. The transfer was an outright gift and such a bona fide gift is not a fraudulent conveyance. *See, Morrisette v. Cook & Bernheimer Co.,* 122 Va. 588, 95 S.E. 449, 918 (1918).

Although the transfer of the diamond ring was a bona fide gift, this does not mean that the transfer is not avoidable pursuant to *Va.Code* § 55–81, which provides authority to avoid voluntary conveyances. In fact, the purpose of the statute is to avoid otherwise valid transactions under the principal that a debtor must be just to his creditors before he is generous to his family and friends. *See, Battle v. Rock,* 144 Va. 1, 131 S.E. 344 (1926). Therefore, because the transaction was a gift, that is there was no exchange of valuable consideration, the transfer is avoidable by an existing creditor. *Barnes v. Vadico Terminals, Inc.,* 408 F.2d 31 (4th Cir.1969); *Morrisette v. Cook & Bernheimer Co.,* 122 Va. 588, 95 S.E. 449 (1918). Section 55–81 of the *Va. Code* is expressly limited to creditors existing at the time the transfer was made. Consequently, the sole issue to be determined is whether an "existing creditor" existed at the time the debtor transferred the diamond ring to his wife.

The debtor transferred the diamond ring to his wife in September, 1978. Prior to that time, the debtor had entered an indemnity agreement with Herbert Weisberger under which the debtor had a contingent liability to Weisberger.[9] The issue presented, therefore, is whether Weisberger was an "existing creditor" of Porter based upon the indemnity agreement alone. No judgment

---

**9.** Porter would be liable to Weisberger only if Weisberger incurred liability that could not be

recompensed by the limited partnership.

for liability was entered against the debtor until sometime after the transfer of the diamond ring. Thus, if Weisberger only became a creditor upon the finding of liability by the state court, Weisberger was not an existing creditor at the time of the transfer and, therefore, the gift of the diamond ring from the debtor to his wife would not be avoidable under *Va.Code* § 55–81.

"Existing creditors" include persons with obligations against the debtor at the time the conveyance was made although their claims may not have matured or been reduced to judgment until after such conveyance. 9A M.J., *Fraudulent and Voluntary Conveyances,* § 71 (Repl.Vol.1977). In order to effect fully the purpose of the voluntary conveyance statute, "existing creditor" should be given a liberal construction. *See e.g., Wallace v. Brooks,* 194 Okl. 137, 147 P.2d 784, 789 (1944); *First State Bank of Mobeetie v. Goodner,* 168 S.W.2d 941, 944 (Tex.Civ.App.1943).[10] Consequently, a contingent liability is as fully protected against fraudulent and voluntary conveyances as a certain and absolute claim, and whoever has a claim arising out of a pre-existing contract, although it may be contingent, is a creditor whose rights are affected by such conveyances and can avoid them when the contingency happens upon which the claim depends. *Carr v. Davis,* 64 W.Va. 522, 63 S.E. 326, 328 (1908).

The instant matter is closely analagous to the case of *Graeber v. Sides,* 151 N.C. 596, 66 S.E. 600 (1909). In *Graeber,* the Supreme Court of North Carolina held that the implied obligation of a principal to indemnify his surety, should the surety be called upon to satisfy the principal's bond or note, constitutes an existing obligation. As a holder of an existing obligation the surety qualified as an "existing creditor" for purposes of avoiding a voluntary conveyance. It is significant to note further that the court ruled accordingly despite holding that the surety's cause of action did not accrue until after the principal deeded real property to his wife without valuable consideration. 66 S.E. at 601.

In another North Carolina case, similar to the instant one, the Supreme Court of that state held that a debt to one partner arising out of partnership obligations by his co-partner made the former an existing creditor of the latter. *Johnson v. Murchison,* 1 Winst. 292, 60 N.C. 286 (1864). In *Johnson* the partnership ended in 1852 and the conveyance assailed was made in 1855–56. However, the settlement of the partnership was not made until 1857 and the former partner recovered a judgment for the debt in 1857.

This appears to be the law in Virginia as well. The only Virginia case uncovered by this Court strongly suggests that Virginia follows and would continue to follow the general rule as set out above and followed by most, if not all, jurisdictions.[11] In *Cram-*

---

**10.** The Supreme Court of Oklahoma stated in *Wallace v. Brooks:*

'The term "creditors," as employed by the statute, has been construed liberally, and not in a narrow, strict, or technical sense. Whoever has a right, claim, or demand, founded on contract, whether contingent or absolute, for the performance of a duty, or for the payment of damages if the contract should not be fully performed has been regarded as a creditor, within the meaning of the statute, against whom a voluntary conveyance will not be supported, though no breach of the contract, furnishing a cause of action, may occur until after the execution of the conveyance. *Bibb v. Freeman,* 59 Ala. [612], 615; *Foote v. Cobb,* 18 Ala. 585; *Gannard v. Eslava,* 20 Ala. 732.'

147 P.2d at 789.

The Court of Civil Appeals of Texas stated in *Goodner:*

The character of the claim, if it is just and lawful, is immaterial. It need not be due; for, although the holder cannot maintain an action until it is due, he nevertheless has an interest in the property as a fund out of which the demand ought to be paid. * * * A contingent claim is as fully protected as one that is absolute. (Citing the Supreme Court of Texas in *Frees v. Baker,* 81 Tex. 216, 16 S.W. 900, 901 (1891).

168 S.W.2d at 944.

**11.** *See, e.g., Graff v. Nieberg,* 233 F.2d 860 (7th Cir.1956) (addressing who is an existing creditor under an indemnity agreement pursuant to Illinois law); *United States v. Ressler,* 433 F.Supp. 459, 463 (S.D.Fla.1977) (applying Florida law); *Cortner v. Anderson, Clayton & Co.,*

*er v. Senger & Turner,* 107 Va. 400, 59 S.E. 375 (1907), the Supreme Court of Virginia confronted a case of analogous facts which presented similar questions of law. *Cramer* involved an appeal of a lower court judgment holding that a conveyance by Ambrose Cramer to Catherine Cramer (his wife)[12] without consideration was fraudulent as to the husband's creditors. The opinion does not state on which statute, if any, the Court relied, however, it addressed the following two legal issues:

> The two questions requiring determination are: (1) Was the consideration for the conveyance of the land in controversy in this cause to Catherine Cramer paid by or with the means of Ambrose Cramer? And (2) was the debt due from Ambrose Cramer to appellees, Senger & Turner, on which the judgment sought to be enforced against said real estate, contracted at the date of said conveyance to Catherine Cramer?

59 S.E. at 376.

The conveyance of real property in *Cramer* was in 1899. The creditors, Senger & Turner, who sought to impose a constructive trust on the realty, obtained a judgment in 1902. The judgment was based upon a contract between Ambrose Cramer and Senger & Turner entered 1896 and terminated in 1900. In addressing the two issues posed above, the Supreme Court of Virginia held (1) that "the land having been conveyed to Catherine Cramer at the request of her husband, A. Cramer, it was nothing more than a gift from him, and void as to his creditors," *id.* at 377, and (2) that "[t]he deed being, therefore, *voluntary* as to Catherine Cramer, . . . , it was rightly decided by

the court below that the land it conveyed was liable for the debt of A. Cramer." *Id.* (emphasis added.)

Furthermore, the court rejected the appellees' contention that the realty should not be subject to the judgment because the indebtedness arose subsequent to the gift of the land. Rather, the Court held that the indebtedness grew out of the 1896 contract and affirmed the lower court stating:

> True, there was no adjustment of the account between the parties until after the deed from the heirs to Catherine Cramer, but that would not change the fact that A. Cramer was the debtor of appellees prior to that conveyance.

*Id.*

With these statements of the Supreme Court of Virginia and the facts of *Cramer* in mind, this Court is satisfied that Virginia follows the general rule that holders of contingent claims are "existing creditors" for purposes of avoiding a voluntary conveyance and, that Virginia would likely adopt the same approach under *Va.Code* § 55–81.

Despite this Court's reluctance to avoid the transfer of the diamond ring, for the Court to hold otherwise than that Herbert Weisberger is an "existing creditor" in the instant case would fly in the face of a generally accepted rule and contradict considerable case law. Moreover, to hold otherwise than that the date of contracting establishes the debtor-creditor relationship would be frought with peril. If a party became an "existing creditor" only upon reducing its claim to judgment, a debtor

225 Ala. 575, 144 So. 443, 445 (1932); *Withrow v. National Sur. Co.,* 122 Cal.App. 242, 10 P.2d 83, 85 (1932); *Richards v. Jones,* 16 Del.Ch. 227, 142 A. 832 (1928); *Hays v. Cyrus,* 252 Ky. 435, 67 S.W.2d 503, (1934); *Newcomb v. Montague,* 205 Mich. 80, 171 N.W. 433 (1919); *Luikart v. Detweiler,* 133 Neb. 614, 276 N.W. 395 (1937); *Peterson v. Wahlquist,* 125 Neb. 247, 249 N.W. 678 (1933); *Wallace v. Brooks,* 194 Okl. 137, 147 P.2d 784, 789 (1944); *Queen-Favorite Bldg. & Loan Ass'n v. Burstein,* 310 Pa. 219, 165 A. 13, 15 (1933); *Mathews v. Montgomery,* 193 S.C. 118, 7 S.E.2d 841 (1940); *McDonald v. Baldwin,* 24 Tenn.App. 670, 148 S.W.2d 385, 388 (1941); *First Nat. Bank of*

*Mobeetie v. Goodner,* 168 S.W.2d 941, 944 (Tex.Civ.App.1943); *Allen v. Kane,* 79 Wash. 248, 140 P. 534 (1915); *Peale v. Grossman,* 70 W.Va. 1, 73 S.E. 46 (1911); *see also* Annot., 89 A.L.R. 751 (1934); 12 R.C.L., *Fraudulent Conveyances,* § 26 (1916).

**12.** In form the conveyance was to Catherine Cramer by creditors of Ambrose Cramer in satisfaction of debts owed Ambrose by the grantors. *See* 59 S.E. at 376–77. In substance, for purposes of the Court's analysis herein, the conveyance was between husband and wife.

could easily frustrate creditors with impunity by giving property away at any time prior to entry of judgment by an appropriate court. If a party became an "existing creditor" at the time demand is made or a suit filed the material date for purposes of the voluntary conveyance would depend upon the obligee-creditor's whim. Furthermore, in relying upon a debtor's assets for recourse, and even if recourse is contingent, a creditor would not engage in a transaction with a debtor if the creditor could become unprotected and remedyless after executing the agreement by the debtor disposing of his assets with impunity. By establishing the date of contract as the relevant date, certainty for all parties is assured with the additional benefit of protecting creditors whose claims may be uncertain or unmatured.

As a holder of a contingent claim against Roscoe Porter that arose prior to the transfer of the diamond ring, Herbert Weisberger is an "existing creditor" whose rights the trustee is entitled to assert pursuant to 11 U.S.C. § 544(b). Consequently, the transfer of the diamond ring from Roscoe Porter to his wife may be avoided by the trustee asserting *Va.Code* § 55–81 pursuant to 11 U.S.C. § 544(b).

As a final note the Court feels obliged to address the debtor's contention that the transfer of the Cornwall Road property was a permissible act of converting nonexempt to exempt assets. This Court readily acknowledges that the Code permits such conversion, even on the eve of bankruptcy, however, the instant matter is not as simple as the debtor alleges. This Court has discussed why transferring real property from one individual to that individual and his wife as tenants by the entirety is not a simple act of converting nonexempt to exempt assets in *In re White,* 28 B.R. 240 (Bkrtcy.E.D.Va.1983). Stated succinctly, a debtor may not transfer assets to another party in order to gain the exempt status. Transferring real property from one individual to an individual and his wife is a transfer of property, it is not a mere conversion; the ownership rights are materially altered by the transfer. It is that characteristic of the transfer of the Cornwall Road property that defeats the debtor's claim that the transfer was nothing more than a permissible act of converting nonexempt to exempt assets.

In summary, this Court concludes that the trustee has established that the transfer of real property on Cornwall Road is voidable pursuant to 11 U.S.C. § 548(a)(1) and 11 U.S.C. § 548(a)(2). In addition the transfer is voidable pursuant to *Va.Code* §§ 55–80 and 55–81 made applicable by 11 U.S.C. § 544(b). Finally, this Court concludes that the transfer of the diamond ring by Roscoe Porter to his wife is voidable under *Va.Code* § 55–81 made applicable pursuant to 11 U.S.C. § 544(b).

The trustee in bankruptcy is directed to prepare and present to this Court within ten (10) days an endorsed order in conformity with this opinion.